NANCY PINSON, Administratrix of D. B. PINSON, deceased, vs. D. O. WILLIAMS and Wife.

L. and H. made an agreement in 1812 or 1813, to purchase from the government a tract of land, to be paid for in four annual instalments; the patent to be taken out to H., who executed his bond to L. for the conveyance to him of one half of the land. L. paid one instalment and died, leaving a widow and one child. The widow administered upon his estate, and married P. in 1816, and P. then qualified as administrator of L. P. made the remaining payment upon the land; H. obtained the patent, and conveyed half of the land to P. P. died, and his widow, as his administratrix, made a final settlement, in 1827, of the estate of L., showing that the estate of P. was indebted to that of L. in the sum of $3613. The child of L. intermarried with W., and at the sale of P.'s estate they purchased negroes to the amount of $1100, leaving $2513 due to the estate of L. Mrs. P. surrendered to H. the deed executed by him to P., and induced him to execute a new deed to W. and wife for the same land, which they received in payment of said sum of $2513. W. and wife filed their bill against Mrs. P. as administratrix of P., charging that she had paid them with their own land, inasmuch as P. had paid for the same with money belonging to the estate of L., and praying for a decree for the sum of $2513, with interest from 1827, subject to a credit of $390. *Held*, that the heirs of P. were necessary parties to the suit, and that no decree could be rendered against the defendant until they were made parties.

The real estate of an intestate decedent is vested in his heirs, and his administrator cannot divest their title by surrendering the deed by which the land was conveyed to the decedent.

The allegation in a bill must correspond with the proofs taken to support it. In other words, a party cannot make one case by his bill and another by his proof; thus taking the opposite party by surprise, not knowing whether to meet the charge of his adversary, or the proof of his witnesses.

Where a woman, who is entitled to dower in lands, surrenders her claims to dower, in part satisfaction of a claim asserted against an estate of which she is the administratrix, and the settlement is afterwards set aside at the instance of the creditor, she will be entitled to her dower, or its value.

Whether an executor or administrator is not bound to plead the statute of limitations, whenever it probably applies; and whether it is not the duty of the court to apply it, even if it be not relied on by the representative of the estate, *quære*.

In error from the superior chancery court; Hon. Stephen Cocke, chancellor.

The facts of the case are sufficiently given in the opinion of the court.

*Potter*, for plaintiff in error.

*Tarpley*, for defendants in error.

*D. O. Williams*, in *propriâ personâ*.

Mr. Justice CLAYTON delivered the opinion of the court.

This was a bill filed in the superior court of chancery, by the appellees against the appellant. It states that Mrs. Williams is the sole surviving child of Samuel Lacey, deceased, who died in the year 1814, and that the appellant is her mother, and was the widow and administratrix of said Lacey; that she afterwards intermarried with D. B. Pinson about the year 1816; that he then qualified as administrator of Lacey; that he died about the year 1826, and that she then administered upon his estate. It also states, that in the year 1812 or '13, said Lacey agreed with one Jesse Harper, that they should jointly purchase of the United States, a certain tract of land, to be paid for, as the terms then were, in four annual instalments; that the patent was to be taken out in the name of Harper, who gave bond for the conveyance of his portion to Lacey; that Lacey paid the first instalment; that during the time that Pinson was the administrator, he made the remaining payments, and procured a patent for the land. But it is not stated in whose name the patent issued.

It also states that Pinson gave up the patent to Harper, and took a conveyance from Harper to himself, for the part of the land, to which Lacey under the bond was entitled; that in September, 1827, the appellant, as administratrix of Pinson, made a final settlement with the estate of Lacey, showing a balance due the latter estate from the former of $3613; that at the sale of Pinson's estate, complainants purchased two slaves, at the price of $1100, leaving a balance of $2513 still due the estate of Lacey.

6*

The bill further charges, that the appellant fraudulently represented to them, that all the money for the land, except the first instalment, was paid by Pinson out of his own funds, and that but for such payment, the land would have been lost to both estates; that she exhibited the deed from Harper to Pinson, obtained as they charge by fraud, and by her misrepresentations induced them to take their own land, in payment of said sum of $2513; and that said Lacey then delivered to Harper the deed which he had made to Pinson, and which had not been recorded, and induced him to make a deed directly to the complainants. The bill goes on to state, that the money paid by Pinson for the land belonged to the estate of Lacey, or, at all events, that he held more money of the estate at the time than would have made the payment. Charges that the complainants were young and inexperienced, and that they went to Tennessee to reside soon after their marriage in 1820, and did not take up their residence in this State until 1834. Prays for a decree for the payment to them of said sum of $2513, with interest from 1827, subject to a credit for the $390 paid by Pinson for the land.

The answer denies all fraud and misrepresentation, admits the contract as stated between Lacey and Harper; does not admit that Pinson paid the money of the estate for the land, or had any money of the estate in his hands at the time. Admits that a deed was made by Harper to Pinson, and that subsequently a deed was made by Harper to the complainants. It also insists that she was entitled to dower in the land, and that as the widow of Lacey, she was entitled to one third of the amount due to his estate from that of Pinson; that the amount due to complainants, at the time of the conveyance of the land to them, was thus reduced to $919, much less than the value of her dower right in the land, which would have included all the improvements.

The chancellor made a decree in conformity with the prayer of the bill, and the case comes by appeal to this court.

It is very obvious that there is a want of proper parties in the cause. There is no allegation of the insolvency of Pinson's estate; on the contrary, it is said to be wealthy.

Hence his administratrix had no right to his real estate, and no power to surrender the deed to the land. The real estate was vested in his heirs, and could not be divested by such act. Unless the heirs were parties, no decree could be rendered in the case which could affect their title. The bill is founded on the assumption, that the land in question already belonged to the complainants at the time it was conveyed to them; it seeks to treat the conveyance as a nullity for that reason; yet the only persons who held a title adverse to such claim on their part, the heirs of Pinson, are not brought before the court. It is impossible that a decree, in effect, divesting their title, can rest upon such a basis. The heirs might have been willing, that the land should be appropriated to the payment of a debt, for which the estate was bound, yet wholly unwilling to give up the land and pay the debt likewise. They should, at least, have an opportunity to defend their right before it is taken from them.

The bill sets out this sum of $3613 as a debt due from the estate of Pinson to the estate of Lacey. The answer asserts that the defendant was entitled to one third of this sum, as her distributive part of Lacey's estate. This seems to be correct. To avoid this conclusion, we suppose, an informal copy of the division of Lacey's slaves in the year 1816 was filed in the papers, showing that a large part of this sum arose from the hire of slaves allotted to Mrs. Williams in that division. This paper not only does not correspond with the allegation in the bill, but is in direct opposition to it. The bill states it as a debt due to Lacey's estate; this paper as a debt due to complainants individually. The rule is, that the allegation and the proof must agree. In other words, a party cannot make one case by his bill, and another by his proof; if he could, the cause, as in this very instance, would be decided upon matters not put in issue by the pleadings. The opposite party would thus be taken by surprise, not knowing whether to meet the charge of his adversary, or the proof of his witnesses. The evidence referred to could only have been admissible under a proper amendment of the bill.

It is most manifest that the appellant was entitled to her

dower in the land.   This would be the case, whether the land originally belonged to Lacey or to Pinson, as she was the widow of each in succession.   She gave up this right to the complainants by the settlement; she now demands its value, in the event of a decree in their favor.   In this particular the decree is clearly erroneous.   It must be reversed and the cause remanded.

When it goes back to the court of chancery, amendments will be open to either party.   In the case of *Henderson* v. *Ilsley*, 11 S. & M. 20, it was left an unsettled question, whether an executor or administrator is not bound to plead the statute of limitations, whenever it probably applies.   In other words, whether it is not the duty of the court to apply it, even if it be not relied on by the representative of the estate.   We advert to it now only to call attention to it, as it may eventually save trouble and difficulty to the parties.

Decree reversed and cause remanded.