ROXANA WOODWORTH *v.* D. R. PAIGE AND OTHERS.

If there is no fraudulent turning away from a knowledge of the facts which the *res gesta* would suggest to a prudent mind ; if mere want of caution, as distinguished from fraudulent and willful blindness, is all that can be imputed to the purchaser, then the doctrine of constructive notice will not apply—then the purchaser will in equity be considered, as in fact he is, a bona fide purchaser without notice.

*Semble.*—That a release of dower in a deed executed by husband and wife, without consideration, to defraud his creditors, will not estop her to claim dower against the grantee, or any purchaser from him with notice. No fraud can be imputed to her because of such release, for the reason that she releases nothing that could be taken by her husband's creditors.

THIS is a petition for dower, reserved in Ashtabula county. The material facts of the case are as follows :

Daniel Woodworth was the owner of the land in dispute. Having previously become bail to the United States, for Robert Harper, who had failed, he, in 1839, conveyed the land to Nathan Warner, without consideration, and for the purpose of preventing its being subjected to the payment of the claims of the United States against Harper, for which he was holden. His wife, Roxana Woodworth, the complainant, with a full knowledge of its object, joined in the conveyance, releasing her dower in the usual form.

Daniel Woodworth continued in possession until 1841, when he sold to two of his sons, Lyman and Erasmus, to whom a conveyance was executed by the said Nathan Warner. The father then gave up the possession to his said sons, and thenceforth, during his lifetime, exercised no act of ownership over the lands, and claimed no interest in them. The sons, and those claiming under them, were the possessors, made large improvements, and were the acknowledged owners until after the decease of the father, which took place in 1848.

In 1843, Lyman and Erasmus sold to their brother, Jefferson, and in 1845, Jefferson, for a valuable consideration, and in good faith, sold to the defendant, D. R. Paige, to whom a perfect *legal* title was made. The sale to Paige was made with the knowledge and under the special advice of the father, Daniel Woodworth.

As to these facts, there was no serious controversy; but whether Paige, upon the proof, was chargeable with notice of the circumstances under and purpose for which the deed from Woodworth and wife to Warner was made, was a disputed question.

*Howe, Chaffee, & Woodbury,* for complainant, made the following points:

1. The complainant was induced to execute the deed to Warner, by fraudulent representations that her interest would not be affected thereby, but that Warner would hold in trust for her. And by accepting the deed Warner became her trustee.

2. In violation of his trust, he, by quit-claim deed, and without consideration, and without her knowledge or consent, conveyed the land to Lyman and Erasmus Woodworth, who took

with full knowledge of her equity; and who thereby became her trustees.

3. Lyman & Erasmus, in violation of their trust, sold and conveyed to Paige, who purchased with full knowledge of complainant's equity, or, at least, with sufficient knowledge to put him on inquiry.

*H. Wilder, Simonds & Cadwell*, for defendant Paige, argued:

1. There is no sufficient evidence that the complainant was induced to execute the deed to Warner by false representations.

2. Paige is a purchaser in good faith, for a valuable consideration, and without notice; and, therefore, as to him, she is barred of dower by its release in due form to Warner, whatever the inducement to her execution of the deed.

3. That having joined in the deed to Warner, which was made for a fraudulent purpose, with a knowledge of that fraudulent purpose, she is not entitled in a court of equity to have the deed set aside for her benefit.

THURMAN, C. J.    There can be no reasonable doubt, upon the testimony, that the complainant was aware of the purpose for which the deed to Warner was executed.    Is she, then, estopped by it to claim dower in the land?

In *Winship* v. *Lamberton*, decided by this court in 1854, but by accident never reported, we gave dower to a widow, who, during her coverture, had joined with her husband in a conveyance of his lands, executed without consideration, to defraud his creditors.

But that case differed from this in two material points.

First.    The defendant's title was derived from a sale on a judgment and execution against the husband alone.    He was not, therefore, in privity with the wife.    He derived no title under the fraudulent deed, but held in direct opposition to it.    The case fell, therefore, within the principle, often held, that a release of dower is binding only as against the releasee and his privies, and that a mere stranger cannot avail himself of it.    *Pixley* v.

*Bennett*, 11 Mass. 298; *Robinson* v. *Bates*, 3 Met. 40; *Randolph* v. *Doss and Wife*, 3 How. (Miss.) Rep. 205; *Taylor* v. *Fowler*, 18 O. R. 567.

Secondly. The fraudulent deed had been declared to be void and set aside, on a bill filed by the purchasers upon the execution, under whom the defendant claimed; and we were of the opinion that the defendant could not set up this deed, thus annulled, to defeat the widow's claim to dower. *Robinson* v. *Bates*, supra. It is true, that it was contended for the defendant, that inasmuch as the decree required the fraudulent grantees to release to the complainants in the bill, the defendant, who held under those complainants, was in privity with these grantees; but we thought that that provision of the decree was only meant to quiet the title against the deed, which, by the same decree, was declared to be void, and not for a transfer of an independent, substantial title; and that, therefore, there was no privity.

But, in the present case, the fraudulent deed has not been set aside, and the defendant, Paige, claims under it. So we are brought to the direct question, whether a wife, who joins in a deed, made *without any consideration*, and to defraud her husband's creditors, is thereby estopped to claim dower against a purchaser, for a valuable consideration, from the fraudulent grantee. It would seem obvious that if the deed of the husband and wife was executed for a sufficient consideration, and was invalid only by reason of the intent to defraud creditors, she ought to be barred of her dower as against the grantee and his privies. For, as between her and them, there is no reason why her release, made for a sufficient consideration, should be avoided. But the case is quite different, I apprehend, where there is no consideration to uphold the deed, and it can only be upheld by the application of the doctrine, that, as between fraudulent grantor and grantee, the title of the latter is good. For why, and in what sense, is the deed fraudulent? And why is it that the title of the grantee, who has paid no consideration, is, nevertheless, good? It is fraudulent, simply because it is an attempt to place the property beyond the reach of the husband's creditors, and the title of the grantee is good, except as against the creditors,

simply because no court will aid a party to avoid his executed contract, made for a fraudulent purpose. But so far as the wife is concerned, she places nothing beyond the reach of the creditors, to which they are entitled. It is the husband's estate alone, and not her dower right, that is liable for his debts, and that estate he can convey without her joining in the deed. Her execution of the deed adds nothing to its efficacy so far as his estate is concerned—it simply releases her dower, which the creditors have no right to touch. How, then, can she be said to be a fraudulent grantor? Whom does she defraud, either by the deed, or by avoiding it so far as to claim dower? Not the creditors, for they had no right to her dower. Not the grantee, for he paid no consideration for the conveyance. Not a purchaser, with notice, from the grantee, for such purchaser is in no better condition than the grantee himself. How, then, can it properly be said that the deed is her executed, fraudulent contract, or conveyance, against which she ought not to be relieved, when its execution does not, and cannot, defraud anybody? And what wisdom or justice is there in visiting women, who know so little of the law, and who are so dependent upon, and so much under the control of their husbands, with the extreme penalty of a forfeiture of their dower, upon the ground that they have attempted to defraud their husbands' creditors, when in fact they have released nothing to which the creditors are entitled, done nothing of which they have a right to complain? For myself, I confess I cannot see; and although these views may not, as I am aware, accord with some adjudicated cases, I nevertheless believe they are sound, and it is probable that we should so hold, were Paige a purchaser with notice.

But is he such a purchaser? That he paid a fair and valuable consideration for the land is not denied; that he has the legal title is apparent; that, if he purchased and paid for the land, and received his conveyance without notice of the complainant's equity, his equity is superior to hers, is obvious; for it would be manifestly inequitable to let her avoid her deed to the prejudice of an innocent person who, on the faith of it, had bought and paid for the estate.

There is no testimony showing that Paige had actual knowledge of the circumstances under which the deed to Warner was made, but it is contended that enough was communicated to him, by one Wood and one Miller, to put him on inquiry; and their depositions have been taken to prove certain casual conversations they respectively had with him when he was negotiating his purchase, about eight years before they testified. Now, to say nothing of the uncertainty of such testimony—an attempt by third persons, having no interest to remember what was said, to relate chance conversations after so great a lapse of time—it seems to us that the conversations, even as related, do not sustain the complainant's case. The substance of Wood's testimony is, that Paige told him that he thought of buying the farm from the Woodworth boys, and asked him what he thought of the title. Wood replied, that he should be a little afraid of it; that he had heard that Warner had a deed for the land.

Here was no notice of any claim of Mrs. Woodworth, nor of the circumstances under which the deed to Warner was made, but merely that such a deed had probably been made.

Miller testified more strongly. He says, that while Paige was talking of buying the land of Lyman or Jefferson Woodworth, he asked him (Miller) what he thought of it, and if they had a good title; to which the witness replied, that he could only give his opinion, which was, that they had no title at all, nor any right to sell it in any shape, and that he believed that, honestly, the place belonged to Daniel Woodworth and wife. But the witness further told him, that Lyman and Erasmus were the boys for him to deal with, instead of Lyman and Jefferson—that they had the deed from Warner.

Here we have no statement of any fact showing a right in Mrs. Woodworth, or impeaching the deed to Warner, but simply an expression of opinion by a man having but little qualification to give one, and whose recommendation to buy of Lyman and Erasmus, was not at all consistent with his opinion, that the land honestly belonged to David Woodworth and wife. But this is not all. It is clearly proved that Daniel Woodworth had, years before, sold the farm to his sons, Lyman and Erasmus, for a val-

uable consideration, and procured Warner to release the title to them; that he gave them the possession, which they and their grantee, Jefferson Woodworth, held until the sale and conveyance to Paige — no claim whatever being made to the place, or the rents or profits, by the old people, or either of them; and that the old man not only knew of Paige's negotiation, but urged Jefferson to accept his offer; and finally, that Paige, having to go East, left the business, with the consideration he proposed to give, in the hands of a lawyer, with instructions to pay over the consideration and take conveyances, if he found the title to be good, but not otherwise; and that the lawyer, upon investigation, found nothing to impeach the title, and being satisfied of its goodness, paid the consideration and took the deeds, while Paige was still absent in the East.

Now it does seem to us, that Paige did all that could be required of a prudent man. He bought of the person in whom there was apparently a good paper title; who was in possession, claiming and enjoying the land, and no one setting up an adverse claim; who, and his brothers, from whom he had purchased, had been in undisputed possession for years, and had made large improvements; the title was investigated by an attorney and pronounced to be good, and the consideration paid and conveyances received by the attorney, in Paige's absence, under instructions not to so pay and receive, unless the title were satisfactory;—and all this without a single fact being shown to have come to the knowledge of Paige, or his attorney, from which it was fairly inferable that Mrs. Woodworth had any claim whatever.

The law on this point is well settled.

In Sugden on Vendors 1040, it is said : " Vague reports from persons not interested in the property, will not affect the purchaser's conscience."

In *Jones* v. *Smith*, 1 Hare 43, the Vice Chancellor said : " If there is no fraudulent turning away from a knowledge of the facts which the *res gesta* would suggest to a prudent mind; if mere want of caution, as distinguished from fraudulent and willful blindness, is all that can be imputed to the purchaser, then the doctrine of constructive notice will not apply—then the purchaser

will in equity be considered, as in fact he is, a bona fide purchaser without notice."

" There is no case which goes the length of saying, that a failure of the utmost circumspection shall have the effect of postponing a party, as if he were guilty of fraud or had actual notice." 1 Story's Eq., sec. 400.

Upon the whole, we are satisfied that Paige is not chargeable with notice, and the bill must therefore be dismissed.