## Case No. 1,071.

BARTHOLOMEW v. WEST et al.

[2 Dill. 290;[1] 8 N. B. R. 12; 7 West. Jur. 441.]

Circuit Court, D. Nebraska. 1872.

HOMESTEAD— ST. NEB. JUNE 22, 1867, CONSTRUED —TENANCY IN COMMON — DELAY IN CLAIMING EXEMPTION.

1. Under the statute of Nebraska relating to the homestead exemption, [Code, § 525,] the head of the family need not be the sole owner of the fee; it is sufficient, if the other requisites concur, that he has such an interest in the land as may be sold on execution.

[Cited in Re Swearinger, Case No. 13,683.]

2. The right to the homestead exemption is not lost by the delay of the husband to claim it until an order is applied for by the assignee in bankruptcy to sell the property for the benefit of the estate.

[3. Cited in Re Pratt, Case No. 11,370, to the point that occupation by the wife and family is equivalent to occupation by the husband.]

[Petition for review of the decision of the district court of the United States for the district of Nebraska.

[In bankruptcy. In the matter of West & Lewis; Bartholomew, assignee.] This is a petition by the assignee under the second section of the bankrupt act, to review an order of the district court refusing the application of the assignee for an order to sell lot 3 in block 66, in the town of Blair. [Petition for review dismissed.]

The ground of the refusal was that the property was exempt as a homestead. The claim of the bankrupt to a homestead is based upon the amendment to section 525 of the Code of Nebraska, which provides:—

"A homestead consisting of a quantity of contiguous land not exceeding two lots, being within an incorporated town, city, or village, owned and occupied by any resident of the state being the head of a family, shall not be subject to attachment, levy, or sale, upon execution or other process issuing out of any court of this state, so long as the same shall be owned and occupied by the debtor as such homestead." Act June 22, 1867, §§ 1–3, (Laws Neb. p. 91.)

In January, 1870, a petition in bankruptcy was filed against West & Lewis, and they were subsequently adjudicated bankrupts. West, one of the bankrupts, makes the claim in this case to the homestead exemption.

At a prior term of this court a decree was entered in favor of the assignee, setting aside as fraudulent the conveyance of the property to the wife of the bankrupt, but reserving all rights of homestead.

The other necessary facts appear in the opinion.

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

William O. Bartholomew, for petitioner for revision.

James W. Savage and Carrigan & Osborn, for West.

DILLON, Circuit Judge.—In March, 1869, the firm of West & Lewis determined to remove to the new town of Blair, then just laid out, with a view to reside and do business. Their lots were purchased mostly on credit, and a title bond received. On one of the lots a store building was erected; on another Lewis erected a house for a home for himself and family; and on the other —the lot now in question—a house was erected in the summer of 1869 by West, who at once moved into it with his family, where they have since resided. In December, 1869, the title bond, which had been taken in the name of the members of the firm of West & Lewis, was assigned to West's father without consideration. The father thereupon procured the legal title from the town proprietor, and after the bankruptcy of West & Lewis, the father conveyed the lot to Mrs. West without any valuable consideration. In January, 1870, the firm was thrown into bankruptcy. At a former term the court decided that the assignment of the title bond and the conveyance to the wife were fraudulent as against the assignee, and a decree was entered to the effect that the property was subject to the payment of the debts of the bankrupts, reserving, however, all right to a homestead, such right not being put in issue in that suit. [Unreported.]

In that case the wife made an ineffectual attempt to show that the lot was purchased and paid for with her money. It appears that she was possessed of some property, that it was sold and the proceeds delivered to the husband, who also put them into the firm, and that when the cash payment was made on the lot, and some of the payments for the improvements, it was out of money or means drawn by the husband from the firm; but there is no satisfactory evidence that the property was otherwise purchased with her money, or that it was held in trust for her.

I find from the evidence, although the title bond was taken in the name of the firm, that in point of fact the understanding of the members of the firm was that Lewis should own in severalty the lot on which he built his house, and that West should own in severalty the lot in question.

The assignee resisted the claim to a homestead, first, on the ground that the lot or property was either partnership property, or held by Lewis & West as tenants in common, and that the statute of Nebraska does not give a homestead unless the party claiming it is the sole owner.

But I find that, in fact, it was not partnership property as respects the co-partners, nor

was it held by them as tenants in common. But if it were owned by them as tenants in common, I do not admit that a homestead right could not be asserted to it in favor of the head of a family who would otherwise be entitled to the exemption. The authorities, however, are conflicting: 1 Amer. Law Reg. (N. S.) 652, 654, 655. and cases cited.[2] See, also, and compare Thurston v. Maddocks, 6 Allen, 427; Smith v. Smith, 12 Cal. 216; McQuade v. Whaley, 31 Cal. 531; Thorn v. Thorn, 14 Iowa, 49.

But it is not now necessary to decide the point, as I find Lewis & West were not tenants in common in respect to this lot, but that there had been an equitable partition of the lots purchased, and that this was West's.

When the statute speaks of property owned by a debtor, it does not mean that the ownership must be of the full legal title. It is sufficient that the interest be such as may be sold on execution or subjected to the payment of debts. And although the husband in this case had only a title bond, this made him the owner in such a sense as to entitle him, the other requisites concurring, to the benefit of the statute of Nebraska on the subject of homestead exemption: 1 Amer. Law Reg. (N. S.) 652, and cases cited;[2] Pelan v. De Bevard, 13 Iowa, 53. See, also, Stewart v. Brown, 37 N. Y. 350.

It is next insisted that if West were otherwise entitled to a homestead, the right has been lost by reason of the fraudulent assignment of the title bond to his father, and the subsequent conveyance to the wife. If it had appeared in the other suit that the property was exempt as a homestead, and that creditors had no claim upon it, the court would undoubtedly have dismissed the bill of the assignee. But I have elsewhere held that where a fraudulent conveyance is made and set aside at the instance of the assignee, the husband or head of the family is not estopped to set up the right to a homestead exemption: Cox v. Wilder, [Case No. 3,308.] To that view I still adhere.

I am of opinion that the right to the exemption has not been lost by delay. When the assignee applied for an order to sell the property, it was competent for the husband to resist it, as he did, on the ground that the property was his homestead and exempt as such.

The petition for review is dismissed. Petition dismissed.

NOTE, [from original report.] See Cox v. Wilder, [Case No. 3,308,] and cases cited in note; In re Cross, [Id. 3,426,] and note.

---

[2] [Deere v. Chapman, 25 Ill. 610; 33 Miss. 462; Peland v. De Bevard. (Iowa, 1862,) 13 Iowa, 53; Horn v. Tufts, 39 N. H. 478; Wolf v. Fleischacker, 5 Cal. 244; Reynolds v. Pixley, 6 Cal. 165; Giblin v. Jordan, Id. 416; Kellersberger v. Kopp, Id. 563.]