## P. L. NICHOL and others *v.* COUNTY OF DAVIDSON.

### October Term, 1877.

DEED — DELIVERY — INTENTION OF PARTIES. — Actual possession or acceptance of a deed is not essential to its efficacy, but the intention of the grantor that what was done should operate as a delivery, and the intent of the grantee to accept the benefit, will suffice; and the intent of either or both may be implied from subsequent admissions, conduct, or circumstances.

HOMESTEAD DENIED UNDER THE CIRCUMSTANCES. — On April 2, 1870, before the adoption of the Constitution of 1870, the husband conveyed his homestead property to his wife, to her separate use during their joint lives, and to himself in fee if he survived her, and if she survived him, to her for life with remainder to their children, with power " to sell, lease, mortgage, exchange, or otherwise dispose of the property," the proceeds, when sold and disposed of, to be invested on the same trusts; on July 23, 1870, the husband and wife joined in executing a mortgage of the property, and on September 21, 1870, a second mortgage, and on May 4, 1872, a conveyance in trust to secure a surety on a debt to the defendant, originating before the adoption of the Constitution of 1870, but in the same year; afterwards, in a suit in this court, and upon a cross-bill by the present defendant, the deed

of April 2, 1870, was set aside as fraudulent, and the property was sold to satisfy the debt mentioned above, and bought by the defendant, to whom the husband and wife surrendered the possession. *Held*, that this bill by husband and wife, claiming a homestead-right, could not be maintained.

*R. L. Morris*, for complainants.
*East*, for defendant.

THE CHANCELLOR:— The bill is filed by P. L. Nichol and' wife, and their four minor children, claiming a homestead-right in realty bought by the defendant at a master's sale ;. and the defendant has demurred.

On March 4, 1865, the complainant P. L. Nichol bought. two lots in West Nashville, and shortly thereafter erected on them a brick residence, wherein he and his family made their home from 1866 until 1876. On April 2, 1870, he conveyed the property to his wife, Sue M. Nichol, to her sole and separate use during the joint lives of himself and wife, and to himself in fee if he survived her, and if she survived him, to her for life, with remainder to their children, or the representatives of such as may have died, with power in the said Sue M. "to sell, lease, mortgage, exchange, or otherwise dispose of the property," and when any of the property is sold and disposed of, "the proceeds are to be invested on the same trusts, and held as aforesaid." On July 23, 1870, Nichol and wife joined in executing a mortgage on the property, and on September 21, 1870, they executed a second mortgage. On May 4, 1872, they joined. in conveying the same property in trust to secure Bradford. Nichol as indorser of a note of P. L. Nichol to the defendant, given to secure the debt for which the property was. eventually sold, and which debt originated by the collection by P. L. Nichol, as clerk of the County Court, of county revenue from March 1, 1870, to April 4, 1870. This deed of trust, besides conveying the property, expressly waived "all right of dower, equity of redemption, or rights under exemption and homestead laws." Afterward, in a suit in.

this court by P. L. Nichol and wife against A. C. Nichol and others, and under a cross-bill of the defendant, the county of Davidson, the conveyance of April 2, 1870, by P. L. Nichol to his wife, was by this court, and, on appeal, by the Supreme Court, declared to be void as against the county of Davidson, and the property ordered to be sold in satisfaction of P. L. Nichol's indebtedness to the county for revenue collected as aforesaid. Under the decree of the Supreme Court, the property was sold on October 16, 1875, to the defendant, and this sale was, on April 18, 1876, confirmed. The complainants were in the actual use and occupancy of the property, as a homestead, at the date of the sale, and so remained and continued for some time thereafter. They have not since had, nor have they now, any other homestead. The surrender of the possession of the property, so far as appears, seems to have been voluntary.

The bill alleges that the final decree in the case of *Nichol* **v.** *Nichol* was rendered by the Supreme Court on May 18, 1875, and that complainant P. L. Nichol, through his attorney, sought to obtain an order of court for the allotment of a homestead, but was informed by the attorney that the court was upon the eve of adjournment, and would not then act upon the matter. He has since sought the homestead allowance from the defendant, through its fiscal agent, the county judge.

By the act of March 12, 1868, ch. 85, sec. 2, the homestead of any housekeeper, or head of a family, residing in this state, to the value of $1,000, consisting of a dwelling-house and out-buildings, and land appurtenant, occupied by such person as a homestead, was exempted from execution or attachment for the debts of such head of a family or housekeeper. By section 3, the act was made to apply as well to equitable as to legal estates. The Constitution of 1870, Art. XI., sec. 11, reads thus: "A homestead in the possession of each head of a family, and the improvements thereon, to the value in all of one thousand dollars,

shall be exempt from sale under legal process during the life of such head of a family, to enure to the benefit of the widow, and shall be exempt during the minority of the children occupying the same. Nor shall said property be alienated without the joint consent of husband and wife, when that relation exists. This exemption shall not operate against public taxes, nor debts contracted for the purchase-money of such homestead, or improvements thereon." The Constitution went into operation on May 5, 1870. On June 27, 1870, the Legislature repealed the act of 1868, but made provision for a homestead, in accordance with the terms of the Constitution, by an act carried into the Code, in sections 2114a to 2122a. The homestead extends to equitable as well as legal estates, and "shall not be alienated without the joint consent of husband and wife, where that relation exists, to be evidenced by conveyance duly executed as required by law for married women."

It has been held by the Supreme Court, that the homestead-right is saved as against debts which were contracted subsequent to the act of 1868, although prior to the act of 1870. *Hager* v. *Fowlkes*, Com. Rep., March 21, 1877, citing *Deatheridge* v. *Walker*, 11 Heisk. 45, and *Kennedy* v. *Stacey*, 10 Heisk. 220. The continuous occupancy of the property in controversy from 1866 to 1876 as a homestead by the complainants would, therefore, if there were nothing else in the case, entitle them to the homestead-right.

The bill concedes that, on April 2, 1870, and, consequently, before the Constitution of 1870 went into operation, complainant P. L. Nichol conveyed the property to his wife, in trust, as hereinbefore set forth. Previous to the adoption of the Constitution, there was nothing to prevent the husband from conveying the homestead. *Kennedy* v. *Stacey*, 10 Heisk. 220 ; *Bilbrey* v. *Poston*, 1 Tenn. Leg. Rep. 77. The conveyance was, therefore, good between the parties, if executed and accepted. The complainant

Sue M. Nichol, the grantee, says in the bill that " she never saw said deed of gift, and it was never in her possession, or accepted by her." Actual possession or acceptance of a deed, it has long been held, is not essential to its efficacy. Even the retention of a deed by the grantor, and want of knowledge of its existence by the trustees and beneficiaries, are not conclusive upon the rights of the parties. *Way's Trust*, 2 De G. J. & S. 365; *Souverbye v. Arden*, 1 Johns. Ch. 240; *Saunders v. Harris*, 1 Head, 206; *Baldwin v. Maultsby*, 5 Ired. Eq. 505; *Wood v. Ingraham*, 3 Strobh. Eq. 105; *Polk v. Varn*, 9 Rich. Eq. 306; Perry on Tr., sec. 103. The intent of the grantor that what was done should operate as a delivery, and the intent of the grantee to accept the benefit, will suffice, and the intent of either or both may be implied from subsequent admissions, conduct, or circumstances. *McEwen v. Troost*, 1 Sneed, 186, 191. The bill states that the deeds of July 23, 1870, and September 21, 1870, by Nichol and wife, mortgaging this property, were declared void by the Supreme Court, as being repugnant to the purposes of the deed of gift of April 2, 1870, and *ultra vires*. Such a ruling could only have been made upon an acceptance of the deed of gift, and by treating it as good between the parties. And it is obvious that the whole contest between Nichol and wife on the one side, and the county of Davidson on the other, in the suit of *Nichol v. Nichol*, was over the validity of the deed of gift to the wife, which, of course, took for granted its acceptance. Upon the face of this bill, I am compelled to hold that the complainants in that suit claimed under the deed of April 2, 1870, and that the allegation that the grantee never saw it, accepted it, or had it in her possession, is not inconsistent with such an intention on her part to claim its benefits as made it fully binding, and as operative as if formally delivered and accepted.

In that view, all the authorities agree that, however invalid the instrument may have been as to creditors, it was

good between the parties. *Parker* v. *Freeman*, 2 Tenn. Ch. 615. The grantee, in such case, takes the property according to the terms of the gift, subject to the claims of creditors. Upon bill filed by the creditors, or other legal steps taken, to impeach the validity of the deed, the grantee holds the property in trust for the creditors, with a right to the surplus, if any. If, now, the husband had, on April 2, 1870, conveyed the property to the wife in trust, first to pay creditors, and then for the husband, wife, and children, as provided in the deed, the trust for the creditors would have been good. For at that time, as we have seen, the husband had the absolute power of disposing of the homestead. All that the wife and other beneficiaries could claim would be the surplus, and there being no surplus, nothing existed upon which to base a homestead or other right. In substance, in the events which have happened, that is the case now before the court, the only difference being that in the case supposed the creditors were secured by contract, in the other by the law.

It is argued, however, that the deed of April 2, 1870, being set aside as void as to creditors, the husband and wife are relegated to the homestead-right, as if the deed had never been made. In order to make a conveyance void as to creditors, the property transferred thereby should be liable to be taken in execution for the payment of debts. *Mathews* v. *Feaver*, 1 Cox, 278 ; *Norcutt* v. *Dodd*, Cr. & Ph. 102 ; *Planters' Bank* v. *Henderson*, 4 Humph. 77. The reason is, that, if the conveyance should be set aside for fraud, the property could not be subjected by the creditors, and they could not, therefore, be damnified. "Fraud without damage, or damage without fraud, gives no cause of action." 3 Bulst. 95 ; *Flippin* v. *Knaffle*, 2 Tenn. Ch. 240. For this reason, a widow has been allowed dower in land, in the fraudulent conveyance of which by her husband she joined, where the conveyance was set aside on the ground of the fraud. *Woodworth* v. *Paige*, 5 Ohio St. 70.

It was so held in a case where the husband and wife con-
veyed land to a third person, who conveyed it back to the
wife, and both deeds were set aside, by creditors, as fraudu-
lent. *Mallory* v. *Horan*, 12 Abb. Pr. 289. The same
doctrine has been extended to conveyances of the home-
stead, in favor of the husband, or wife, or both. *Crum-
mer* v. *Bennet*, 68 N. C. 494 ; *Castle* v. *Palmer*, 6 Allen, 401 ;
*Cox* v. *Wilder*, 2 Dill. 45 ; *McFarland* v. *Goodman*, 6
Biss. 111 ; *Dreutzer* v. *Bell*, 11 Wis. 114 ; *Pike* v. *Miles*,
23 Wis. 164 ; *Rix* v. *Capitol Bank*, 2 Dill. 367 ; *Smith* v.
*Kehr*, 2 Dill. 50. In the last of these cases, the fraudulent
conveyance was by the husband to the wife, and was set
aside by the assignee in bankruptcy of the husband, who
had absconded. In the District Court, Judge Treat held
that the conveyance, although void as to creditors, vested
the wife with the husband's right of homestead, and that
she was entitled to it. On appeal, Judge Dillon held that
the right was in the husband, but that the wife might use
his name for the purpose of securing the benefit of it. The
argument in the Circuit Court was probably the same made
in the case before us, namely, that the homestead is secured
only to the head of the family, the husband, and could
not exist in the wife. The like ruling was made by Judge
Dillon in *Bartholomew* v. *West*, 2 Dill. 290, where the prop-
erty was assigned to the wife's father, and by him to the
wife, and both deeds were declared void as against the as-
signee in bankruptcy of the husband. But our Supreme
Court, upon precisely the same state of facts, where the
homestead was conveyed by husband and wife to the wife's
father, and by him to the wife, and the deeds were set aside
by the creditors of the husband, held that the wife was not
entitled to the homestead. *Cowan* v. *Johnson*, at Knoxville,
May 27, 1876, Com. Rep. of October 11, 1876. " When
she executed and acknowledged the deed," says Lea,
Special J., " although fraudulently done by her husband,
she thereby parted with the right to homestead, and the

fact that the land was afterwards fraudulently conveyed back to her will not entitle her to homestead." The same conclusion must have been reached in *Nichol* v. *Nichol*, where the deed of gift of April 2, 1870, directly from the husband to the wife, was declared void as to creditors, the present complainants being parties, and there being no reservation as to the homestead. These decisions, although against the current of authority, are conclusive upon me. They may be a little hard on the wife, but I am not prepared to say that they are not based on sounder ethics, in that they visit fraud with severer penalties.

Our decisions might be rested on another ground. The Constitution and the statute exempt " a homestead in the possession of each head of a family." The head of the family is, of course, the husband, while he lives, and if he has conveyed away the homestead in the mode prescribed by law, there is no longer any thing to exempt. Since May 5, 1870, the wife must join in the conveyance in the mode prescribed by law, and this was done in *Cowan* v. *Johnson*. Prior to that date, the conveyance of the husband alone sufficed, as in the case before us.

It is ably and ingeniously argued by the learned counsel of the complainants, that, even if the deed of gift be treated as valid between the parties, the husband still had such an estate in the property as would sustain the claim of a homestead by him as the head of the family. But his estate under the deed is only a remainder, contingent upon surviving his wife, the latter having the estate to her sole and separate use during their joint lives. Besides, he parted with all the interest he had by the mortgages, executed jointly with the wife, of July 23 and September 21, 1870, and May 4, 1872. The homestead-right passed by each of these deeds without being named, the waiver of the last deed being supererogatory. *Hodges* v. *Williams*, Com. Rep. of September 22, 1875, and *Lover* v. *Bessenger*, Com. Rep. of October 25, 1876. These conveyances, although

*ultra vires* as to the wife, under the power of disposition conferred by the deed of gift, were binding on the husband. Nothing remained in him after these conveyances, the joinder of the wife being according to the law, and effectual as to the husband's interest, although nugatory as to her own interest or that of her children. The bill shows that the property did not sell for enough, under the Supreme Court decree, to pay these debts. There is, therefore, no estate or interest, or even occupancy of the property in the husband on which to base a claim of homestead. The wife can only claim the homestead-right through the husband. But he had parted with all right, title, claim, or interest in the property, except a contingent remainder after her death, before she acquired by law such a homestead-right as would not pass by his conveyance alone; and even that contingent remainder was alienated with the joint consent of husband and wife, " evidenced by conveyance duly executed as required by law for married women."

The complainants were parties to the suit of *Nichol* v. *Nichol*, in which the deed of April 2, 1870, was set aside in favor of the husband's creditors, and the property ordered to be sold in satisfaction of their debts. The bill does not show that the rights of homestead were reserved. It may be that they would have been had application been made at any time before the sale, or, perhaps, before the confirmation of sale. The reservation would have been of no avail, if I am correct in the foregoing conclusions. But without such reservation, I do not see how the effect of the decrees in that case can be avoided. *Miller* v. *Sherry*, 2 Wall. 237. The ground of relief now relied on was then existing, and was a good defence to that suit *pro tanto*, if it be sufficient to sustain this suit. The decree was conclusive as to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time. *McFarland* v. *Goodman*, 6 Biss. 118; *Knight* v. *Atkisson*, 2 Tenn. Ch. 388, and cases cited. The demurrer is well taken.