ANN S. FRENCH *vs.* CHARLES V. LORD & another.

Penobscot. Opinion June 23, 1879.

*Dower,—release of, nature of. Attachment. Levy. Stat. 1838, c. 344,—construction of. Assignment of dower.*

A widow is not dowable of land taken by the right of eminent domain for a railroad.

When a wife releases her right of dower by joining in her husband's deed, only the estate which actually passes by the deed is affected by the release.

Thus, where the deed purports to convey all of a certain parcel of land, but prior to the delivery of the deed most of it was attached, and subsequent thereto the attachments ripened into levies: *Held,* that the estate actually conveyed by the deed comprised only such land as was not covered by the levies, and that the release of dower was confined to the land actually conveyed.

A release of dower conveys no estate; and neither is it an utter extinguishment of the right of dower forever, for all purposes and as to all persons; but it operates against the releasor by estoppel only, and in favor of those only who are parties and privies thereto.

An attachment of real estate upon a writ containing a general count without any specification attached, was valid if made before Stat. 1838, c. 344, (R. S. 1841, c. 114, § 33, R. S. 1857, c. 81, § 31, R. S. 1871, c. 81, § 56,) took effect, though the judgment was not recovered and the levy made until after.

*Poor* v. *Larrabee,* 58 Maine, 543, is overruled so far as this point is concerned.

Where an execution debtor owned land in common, and the appraisers described the whole lot by metes and bounds and as held in common, and then appraised and set off to the creditor a specified fractional undivided part thereof, the levy is valid within the provisions of R. S. of 1841, c. 94, §§ 10, 11.

A widow's dower in lands which were held in common by her husband must be set out to her to hold as tenant in common during her life.

ON REPORT for the legal adjudication of the rights of the

parties by the law court which is to decide of what portion, if any, the demandant is dowable, and upon what principles the dower is to be assigned and damages to be assessed, the damages for detention to be assessed by the commissioners who may be appointed to assign the dower in the land.

The demandant claims to be endowed of 31-35 parts of 1-3 of the wharf and lot at the foot of Exchange street, in Bangor, known as City Point Wharf, at the junction of the Kenduskeag stream with Penobscot river.

The general issue was pleaded with specifications setting forth a release of dower, and that the E. & N. A. Railway Company had located its track over the lot, and thus appropriating a large part of the premises to its use.

It was admitted that the premises were formerly the property of Zadoc French, at the time of his death ; that he died intestate in 1830 ; and that the premises descended to his three sons, Ebenezer, Frederic F. and George S. French, the demandant being the widow of George, who died February 15, 1849.

Demand of dower August 9, 1871, admitted. Writ dated September 12, 1871.

On May 24, 1836, Frederic F. French conveyed his one-third to Ebenezer, his wife not signing the deed.

On September 28, 1836, Geo. S., by deed of warranty recorded October 8, 1836, conveyed his one-third to Ebenezer, and his wife (demandant) joined in the deed, releasing her right of dower ; and on December 26, 1836, Ebenezer released or reconveyed to the demandant, by deed of that date, recorded December 27, 1836, her right of dower which she had released to him as above.

The defendants introduced the following levies made on executions against George S. in actions in which there were attachments made prior to the deed from George S. to Ebenezer, as above stated, all of which levies were duly recorded :

I. On September 20, 1836, E. H. Sleeper attached 1-5 of George S. French's 1-3 and perfected the same by levy February 3, 1842.

II. On September 27, 1836, James Crosby attached 1-7 of George S. French's 1-3, and perfected the same by levy on July

3, 1838. Sleeper conveyed his levy to Crosby, thus giving him 12-35 of George's 1-3, or 4-35 of the whole lot; and by subsequent proceedings in partition this was set off to him in severalty.

III. On December 22, 1835, Samuel Coney attached 1-10 of 1-3, or 1-30 of whole, and levied July 7, 1840.

IV. On September 2, 1836, Moody and LeBicton attached 3-7 of 1-3, or 1-7 of whole, and levied July 11, 1840.

V. On September 17, 1836, Rufus Davenport attached 1-8 of 1-3, or 1-24 of whole, and levied March 12, 1841.

These levies were all subsequently conveyed by quitclaim deeds by the creditors to A. M. Roberts, prior to 1850.

The defendants also introduced the following attachments and levies made on writs and executions against Ebenezer :

VI. On August 20, 1836, Charles Mustard attached, and on February 12, 1838 levied on 1-30 of whole.

VII. On October 26, 1836, J. Faulkner attached, and on July 7, 1838, levied on 1-43 of whole.

VIII. On October 26, 1836, Isaac Chase attached, and on July 7, 1838, levied on 1-24 of whole.

IX. On November 1, 1836, Fiske & Bridge attached, and on August 2, 1841, levied on 19-40 of whole.

X. On November 28, 1836, A. M. Roberts attached, and on June 30, 1838, levied on 1-9 of whole.

XI. On December 9, 1836, Towle & Parsons attached, and on June 30, 1838, levied on 1-24 of whole.

XII. On December 21, 1836, R. C. Johnson attached, and on October 2, 1839, levied on 1-7 of whole.

XIII. On December 26, 1836, D. B. Hinckley attached, and on July 23, 1840, levied on 1-40 of whole.

Levies VI to XI, inclusive, were afterwards, but prior to 1850, conveyed by quitclaim deeds to A. M. Roberts, who, on October 29, 1852, conveyed the premises to Gideon Mayo, from whom by several intervening conveyances and descents the same title has come to, and is held by, these defendants. But the defendants have never received any conveyance of the interest of Johnson and Hinckley, the last two levying creditors.

On the first of December, 1849, while Roberts held the title,

he took a written lease under seal from this demandant, agreeing therein to pay her seventy-five dollars per year for her dower, for the term of five years; and in accordance with the terms of this lease, this rent was paid by said Roberts, the last payment endorsed on said lease being September 1, 1854 ; this rent was afterwards increased by Samuel Veazie, defendants' intestate, to one hundred dollars per year, the last payment being in January, 1871. There was no agreement that by receiving these sums, demandant should be barred from claiming dower or from increasing her demands, but each was at liberty to put an end to the arrangement; and at the time named the plaintiff did so.

After the death of George S. the railway company located its track over the premises and built its railroad across it, the railroad bridge at the mouth of Kenduskeag stream being built upon or to it. A strip of land across the center of the lot ninety-nine feet in width was taken for the road, and is now used by the company according to the terms of its charter.

In the writs in favor of Charles Mustard and Amos M. Roberts against said Ebenezer there was in each, in addition to the specific count, a count for money had and received, without any specification of the claim.

In Isaac Chase's writ against Ebenezer French were two specific counts on a bill of exchange. In the several other writs there were no general counts, but specific counts in which the nature of the damage was set out.

The deed of A. M. Roberts to Gideon Mayo contained the following clause: " To have and to hold the aforegranted premises, with all the privileges and appurtenances thereof, unto the said Gideon Mayo and his heirs and assigns to their use and behoof forever, and I do hereby, for me and my heirs, executors and administrators, covenant and engage to and with the said Mayo and his heirs and assigns that I am lawfully seized in fee the aforegranted premises that they are free from all incumbrances except as below ; that I have good right to sell and convey the same to the said Gideon, and that I and my heirs, executors and administrators shall and will warrant and defend the same premises to the said Gideon Mayo, his heirs and assigns forever, save any and all dower, real or contingent."

The deed from Courtland Palmer to Samuel Veazie contained the following clause :

" Also all the premises in full which are described in a deed from Amos M. Roberts to Gideon Mayo, which is particularly referred to for description of the premises hereby conveyed. The said premises are conveyed subject to all dower and rights of dower of Mrs. French, which the party of the second part assumes."

*J. F. Godfrey,* for the demandant.

*A. W. Paine,* for the defendants.

VIRGIN, J. This demandant in her action against Crosby (61 Maine, 502,) having recovered her dower in the land held under levies numbered one and two in this record, being one-seventh and one-fifth or twelve-thirty-fifths of her husband's former interest, now seeks to recover it in the remaining twenty-three-thirty-fifths.

A portion of the land in which dower is here claimed was taken, after the death of her husband, by a railroad company for railroad purposes, and has been so occupied ever since.

A widow is not dowable of lands taken for public use. And the reason is obvious. In all such cases a division of the estate thus taken would destroy it for the use to which it has been appropriated. Private interests must give way to the public convenience and necessity,—rights in dower as well as any other interest in real estate. It has been well held that, when the estate is taken before the decease of the husband, the value of the widow's inchoate right of dower is deemed too uncertain to admit of compensation ; that the husband must be regarded as the owner of the entire estate ; and that as such he is entitled to full compensation for it. But immediately upon the husband's decease, her right of dower being then consummated, no reason is perceived why she, like any other party, should not be entitled to compensation for her interest. 1 Scrib. Dow. 554. 1 Wash. R. Prop., c. 7, § 37, and cases cited. Having a valuable interest, she had her remedy ; but she cannot obtain it in this action against these defendants.

Is she entitled to dower in the whole or any portion of the residue ?

The attachments numbered three, four and five were made prior to the conveyance by the demandant's husband to Eben, of September 28, 1836. The executions, issued on the judgments recovered in the several actions on which these attachments were made, having been seasonably and regularly extended upon the land attached, the levies by relation operated as statute conveyances of the dates of the respective attachments. *Nason* v. *Grant*, 21 Maine, 160. And by the express provisions of the statute a married woman shall not be deprived of dower by a levy on her husband's real estate. R. S. 1841, c. 94, § 48. *French* v. *Crosby*, 61 Maine, 502.

It is true that the demandant joined in her husband's deed of September 28, 1836, and thereby barred her right of dower " in the estate conveyed by her husband." R. S. 1841, c. 94, § 9. But it is also true that " the estate conveyed by her husband " by that deed was not in fact his entire one-third interest, though such was the description of the premises in the deed ; for by the first two levies 12-35, and by the next three 183-280, making 279-280 of his one-third, were conveyed to the levying creditors ; and there remained only 1-280 to be conveyed by the deed and in which her dower could thereby be barred.

Moreover, this statute bar, instead of being an " utter extinguishment of the right of dower forever, for all purposes and as to all persons," as held in some states (*Morton* v. *Noble*, 57 Ill. 176. *Elmeredorf* v. *Lockwood*, 57 N. Y. 322), in this state and several others, on account of the peculiar nature of the right, operates against the releasor by estoppel only, and therefore in favor of those only who are parties or privies to the release. *French* v. *Crosby*, *supra*. So that these defendants cannot invoke any release in the deed as to the land covered by the above mentioned levies, for the double reason that the deed not conveying the land, the release did not pertain to it ; and were it otherwise, the defendants not holding their title to that land under, but in spite of, the deed, are not privies. Our conclusion, therefore, is that the demandant is entitled to recover her dower in 183-280

of her husband's former interest covered by levies three, four and five, or 61-280 of the whole.

Is she entitled to recover in the remaining 1-280 conveyed by her husband's deed of September 28, 1836, in which she joined and released her dower to Eben ?

The first five attachments against the demandant's husband ripened into levies, taking the dates respectively of the former. The premises, including the 1-280, were then held by Eben and the levying creditors as tenants in common. *Strickland* v. *Parker*, 54 Maine, 263. So much of the common estate as the defendants hold under a valid levy against Eben, dating subsequent to September 28, 1836, is free from the incumbrance of the demandant's right of dower by virtue of her release to Eben and the defendants' privity ; but as to any one or more of such levies as shall be found to be invalid, or to which they had not, prior to the commencement of this action derived title, they not being privies cannot invoke the estoppel against the demandant; and as to all such she is entitled, under the pleadings, to recover, with an exception hereafter to be noticed.

If the several attachments against Eben were valid, his deed to the demandant, executed on December 26, but not recorded until December 27, 1836, whether possessing any inherent force or not, becomes immaterial to the decision of this case, inasmuch as all of the attachments and (by relation) levies were made prior to the registration of the deed.

*Attachments.* It is contended that the attachments in favor of Mustard and Roberts, though valid on August 20 and November 28, when respectively made, became void when the Stat. 1838, c. 344, became effective, for the reason that the writs contained a general money count, without any specification which the statute required should be annexed to the writs. Such was the effect given to this statute in *Poor* v. *Larrabee*, 58 Maine, 543. But by its terms the statute did not take effect until sixty days after approval, and it was approved March 23, 1838. The Mustard levy having been completed February 12, 1838,—more than three months before the statute became operative—the attachment could not of course be affected by it.

Moreover, we are also satisfied that this statute did not affect the Roberts attachment. It is a familiar general rule that all statutes are to be considered as prospective, and are to be held not to prejudice the past transactions touching their subject matter, unless the contrary intention is clearly and unequivocally expressed. On recurring to the statute, instead of finding any such expression, the first section expressly limits the application of its provisions to attachments " thereafter made ; " while the provisions of § 4, invoked in this case, are made applicable only to the attachments mentioned in § 1, by the words " attachments made as aforesaid." And such was the express decision of the court in *Smith* v. *Keen*, 26 Maine, 411, promulgated in 1847. That decision quieted the titles of numerous estates depending on similar attachments of about the date of the statute ; and though one member of the court, as then constituted, did not concur, we should deem it bad policy to overturn it after it had been so long acquiesced in.

The objection that there were two special counts on one bill of exchange in the Chase writ is not within the spirit of the statute, and cannot avail the demandant. No objection is made to any other of the attachments.

*Levies.* The Mustard levy having been made, as admitted by counsel, upon Eben's land as he owned it before the demandant's husband conveyed to him, she cannot be entitled to dower therein.

The objection to the levies by Faulkner, Chase, Towle and Parsons is that they are void for indefiniteness,—that there was set off in each case an uncertain estate, as in *Rawson* v. *Lowell*, 34 Maine, 201. But we do not so understand them. In the case cited, the levy took " four-fifths of all the interest which Truxton held in the land jointly with J. C. Lowell and others," without stating what part Truxton held, or what part of the whole was set off, or what territory the whole comprised. The court might well say, in relation to such a proceeding, that " the levy of a fractional part of an uncertain estate in land is not sustainable." In each of the levies in question, however, the whole common estate was described by metes and bounds, and declared by the appraisers to be held by the debtor in common with others, thus

rendering the territory certain instead of "uncertain," as in *Rawson* v. *Lowell*; and there a specified fractional undivided part of the whole is appraised as the property of the debtor and the same is set off to the creditor. We do not perceive why the objection raised to these levies is not fully answered, and why they are not saved under the provisions of R. S. of 1841, c. 94, §§ 10, 11, as construed in *Swanton* v. *Crooker*, 49 Maine, 458, and the cases which have succeeded that.

The levy of Fiske & Bridge is much more full than the preceding, many facts stated therein being surplusage.

The only remaining levies,—of Hinckley and Johnson—were made in the same manner. But it is further urged in relation to them that the title thereto never having been transferred to the defendants, they cannot set them up in defense. Such fact could not have been proved under the pleadings; but the fact that the defendants were not tenants of the freehold as to the land covered by these two levies having been admitted without qualification, it thereby becomes available to them the same as if pleaded and proved.

The clause " save any and all dower, real or contingent," in the deed of Roberts to Mayo, and that " the said premises are conveyed subject to all dower and right of dower of Mrs. French, which the grantee assumes," in the deed of Palmer to Veazie, are mere qualifications of the covenants. They do not so affect these defendants' rights as to estop them as privies to the demandant's releasee from setting up the release. *Knight* v. *Mains*, 12 Maine, 41, is not applicable to this case.

Our conclusion, therefore, is that the demandant is entitled to judgment for her first dower in the premises covered by levies three, four and five only, making the just deductions on account of the land held by Crosby in severalty, as well as of that taken and held by the railroad.

By the terms of the report, the court is " to decide in what portion (if any) the demandant is dowable; and upon what principles the dower is to be assigned and damages to be assessed."

As before seen, the attempted alienation by the deed of September 28, 1836, failed as to the land covered by levies three, four

and five; but the levies took the title as of the date of the attachments, when the husband held as tenant in common. Dower cannot be assigned by metes and bounds in lands thus held. When dower in lands thus held is assigned by the probate court, partition is first made and then dower is assigned to the widow in severalty. R. S., c. 65, § 19. No express provision is made in R. S., c. 103, authorizing *in totidem verbis* an assignment of dower in lands thus held. But by § 1 every woman is entitled to her dower " at the common law " in lands of her husband to be assigned to her after his decease. And by § 16, when it is not set out to her by the heir or tenant, " nor assigned to her by the probate court, she may recover it by a writ of dower." After judgment it is to be " set out by three disinterested persons, to be appointed " as provided in § 23. There being no statute provision to govern the commissioners in assigning dower in lands held in common, they must look to the common law ; and that requires endowment by metes and bounds when the husband was seized in severalty ; but when he was seized in common with others, her endowment must be in common ; for she being in, *pro tanto*, for her husband's estate, cannot take it otherwise than he had it. 1 Inst. 32, *b.* 34, *b.* 37, *b.* 1 Greenl. Cruise, Tit. VI, c. 3, § 10. *Ib.* Tit. XX, § 25. In other words, she is entitled to dower in 61-280 of the residue after deducting the land held by Crosby in severalty, together with that taken by the railroad, to hold in common during life.

The demandant cannot share in the increased value, if any, caused by improvements actually made upon the premises since the statute alienations ;. but she has the benefit of their natural rise in value. *Mosher* v. *Mosher*, 15 Maine, 372. *Carter* v. *Parker*, 28 Maine, 509. If, therefore, no improvements have been made since the husband parted with his title by the levies, the commissioners should assign to her such a fractional part of 61-280 of the residue above named as will produce an income equal to one-third part of the income which the 61-280 of such residue will produce, or 61-840 of such residue. But if improvements have been made which materially increase the income, then her share should be proportionally less. Whatever it shall prove to

be, it must be set out to her to hold as tenant in common during her life.

Damages for detention are to be assessed upon the same principles, the demandant to recover one-third of the annual income from September 9, 1871, one month after demand, to the date of the judgment. Though, in the absence of the stipulation in the report, the damages would be assessed only to the commencement of the action. R. S., c. 103, § 20.

*Judgment for demandant.*

APPLETON, C. J., WALTON and DANFORTH, JJ., concurred.

PETERS, J., submitted the following opinion :

I concur in the opinion of the court. Investigation removes a hesitation I had upon a point, upon which I will add some thing.

George French conveyed by deed of warranty to Eben French, George's wife relinquishing her right of dower. The estate was at the time under attachments by creditors of George. The attachments became perfected by levies upon the property. The same estate was also levied upon by the creditors of Eben. Those against George took the estate, and those against Eben failed to take it. The present defendants, under sundry intervening conveyances, became purchasers under the levies made upon George, and also under those made upon Eben. The opinion decides that under the first named levies the defendants get all their title, and that under the others they get no title, excepting as to a small undivided interest not included in the levies against George. And the opinion holds that the defendants do not get the benefit of the release of dower by George's wife to Eben with the exception before named, for the reason that they hold the estate, not under the deed of George to Eben, but in opposition to and in spite of it.

The position of defendants' counsel is ; that they hold under Eben as well as under George ; that some of the levies upon Eben were made before those upon George ; that Eben and his levying creditors were, or might have been, in possession, receiving rents and profits, before the levies upon George ; that they

became the owners of the estate, subject to the attachments against George ; and that, the subsequent levies upon George being purchased by those who held those made upon Eben, the two titles became mingled and merged into one.

This would have been so had the creditors levying upon Eben purchased in the attachments upon George, or had they redeemed the levies made under those attachments before they ripened into an absolute fee. But that did not take place. What was at first an incumbrance only, was permitted to become a title. This title displaced and defeated any other claim to title. An estate cannot be occupied by two inconsistent titles at the same time. The principle of merger does not apply. That is where a greater and lesser thing meet, and the latter loses its separate existence and sinks into the former. They must meet in one and the same right. There can be no merger where the estates are successive and not concurrent, nor where one estate is valid and the other void, or has been avoided. Bouv. Law Dic. Merger. *Richardson* v. *Wyman*, 62 Maine, 283.

The levies upon George and those upon Eben were not in the same right. They were not concurrent rights. They were not one a dominant and the other a servient estate. They were hostile to each other. The levies upon George found nothing to merge with. The most that could be claimed would be that the deed of George to Eben created a conditional title in Eben until the levies upon George were perfected, making possibly consecutive but not concurrent estates. It is clear that the deed of George conveyed no estate to Eben which now subsists in Eben's successors, with the exception named before. The records may show, as far as forms go, that the defendants have a deed representing such a title, but none in reality exists. Blank paper would convey as much title to them. The fact that the defendants have a valid and also a pretended title, cannot make the pretended title good for anything. It is no more in their hands than if in the possession of other persons.

The defendants, having no title to the fee through George's deed, can have no relinquishment of his wife's dower from that source. It must be borne in mind that a relinquishment of

dower conveys no estate at all. It is merely a bar or release of a future contingent interest in an estate. It is not independent of the fee, but is an inseparable accompaniment of it, an incumbrance upon it. When the fee is conveyed, the dower is relinquished. When the fee conveyed ends, the dower is no longer relinquished. The release amounts to no more than a covenant of non-claim. The wife binds herself that whatever estate the grantee and his privies shall have and enjoy through her husband's deed in which she joined, shall be exempted from future claim by her. She releases dower in the kind and quantum of estate that passes by her husband's deed. From the very nature of the claim its release can only apply to land legally conveyed, and cannot apply to land not conveyed by the deed. So far as Eben got a title from George's deed to him, so far did he get the title free from his wife's dower. If the deed amounted to conveying a base or determinable fee, terminating when George's creditors became seized under their levies, thus far did the release of dower extend and no farther. After that there was no estate in Eben from George for the relinquishment to attach to or operate upon. It could not operate on the contingent dower alone. In 2 Scrib. Dow. 295, the author says; " Her (the wife's) renunciation of dower is to attend the conveyance of her husband; to endure while that endures and no longer. Hence, if the conveyance of the husband be inoperative, or if it is set aside, or avoided, the right of dower remains unimpaired." He cites numerous cases in support of the text. See *Clowes* v. *Dickerson*, 5 Johns. c. 247.

There are various decisions showing that the release of dower is co-extensive with the estate actually and legally conveyed. A widow is not barred from dower against the assignee of a foreclosed mortgage, in which she did not join, though she joined with her husband to release dower to a third person in the equity of redemption. *Littlefield* v. *Crocker*, 30 Maine, 192. It has been many times held that, where the wife joined with the husband in a mortgage, she is dowable in the right of redeeming from that mortgage. *Smith* v. *Eustis*, 7 Maine, 41. Dower will be defeated in an estate where her husband's seizin is lost by the

restoration of a prior seizin, as in case of a re-entry for condition broken. 4 Kent, 48. Even if she has been actually endowed, and the title of her husband is defeated by a paramount title, her dower terminates upon the eviction. *Brown* v. *Williams*, 31 Maine, 406. If the husband is seized of a determinable fee, and it is determined by the happening of the event upon which it is limited, the right of dower on the part of the wife or widow ceases. Wash. R. Prop. Tit. Dow. Where a creditor avoids a deed from the husband to his wife on the ground that it is fraudulent and void as to him, the wife is nevertheless entitled to dower. *Richardson* v. *Wyman*, 62 Maine, 280. *Robinson* v. *Bates*, 3 Met. 40. If a conveyance of the husband during coverture by error omits a parcel from the description, it cannot be reformed as to the wife. 2 Scrib. Dow. 297, and cases.

In *Stinson* v. *Sumner*, 9 Mass. 143, where one had conveyed land with covenants of warranty, his wife joining in the deed to relinquish dower, and the purchaser afterwards recovered damages of the vendor for a defect of his title to the land, it was held that the widow was not barred of her dower. The decision was not upon the ground especially that damages had been recovered on the warranty. The court there say : " The estate did not pass from Parsons to Hinkley as appears on his own allegations and proceedings ; and the relinquishment of dower by the wife cannot now avail, since there is no estate in Hinkley for it to operate upon." It was enough that an action on the covenants might be maintained. That right existed in Eben under his deed of warranty from George. That case shows that there was an attempt there, as here, to prevail against the dower by a union of titles under opposing deeds. The party there, who held the title without a release of dower, obtained a quitclaim from the person to whom the land had been conveyed with a relinquishment of dower, but whose title had been defeated by prior attachments upon the estate. And in that case, as in the case before us, the deed was not wholly defeated, but carried the fee to one parcel not disturbed by the attachments.

In Ohio an estate was deeded with dower relinquished. The grantee was evicted therefrom by the creditors of the grantor

upon the ground of a fraudulent conveyance. After levies were made, in a creditor's bill, the court ordered the grantee to release all his right to the creditors, who thereby united, as far as forms could produce it, the title by levy with the title by deed. The court held that the title by deed became defeated by the proceedings of the creditors, and that the widow of the fraudulent grantee was entitled to her dower, and that the conveyance by order of the court was to quiet the title, but could not have the effect of an independent or substantial title that would take the right of dower from her. *Woodworth* v. *Paige*, 5 Ohio St. 70. 1 Scrib. Dow. 613, and cases cited.

The case of *Harriman* v. *Gray*, 49 Maine, 537, has been widely promulgated as deciding that, although a release of dower to a stranger to the title does not extinguish the right of dower, if the releasee afterwards acquires the title, the release operates to bar the dower as to him, by way of estoppel. That was not the point decided. The most that the case decides is that a deed relinquishing dower to a person who held the title, but had conveyed it away without warranty, would not enure to such person's grantee. That case furnishes no support to the position of the defendants here. Eben French was the releasee in this case, but the title did not come to him, nor were there any covenants from him to his successors. *Crocker* v. *Pierce*, 31 Maine, 177. Undoubtedly, after a sale by the husband or after his estate has been taken on execution, the wife may relinquish her claim to dower by a separate deed to the person owning the title. *Stearns* v. *Swift*, 8 Pick. 532. *French* v. *Peters*, 33 Maine, 396. R. S., c. 103, § 6. But that is not this case.

The defendants are strangers to the title so far as they undertake to hold under the deed from George French to Eben French. The estate upon which the relinquishment of the demandant's dower was intended by that deed to operate, became defeated, leaving no estate for her release to operate upon. The widow is not barred except as to those who claim under the deed (in which she joins) as a valid deed conveying the title or some part of it. She is barred as to the small undivided portion of the premises in the deed of her husband, which the attachments against him did not take, and is no further barred.