Judge Lane
delivered the opinion of the court:
The plaintiff, by his bill, avers that he holds the possession of, ■and the legal title to, outlots Nos. 1 and 5, in Chillicothe, and asks of the court to exercise the authority conferred by statute, to quiet his title against the claims sot up by the defendants.
*The heirs of Massie have not answered. The heirs of *479 Worthington set up a title, on a sale by execution', made June 4, 1825. This judgment is subsequent to the judgment under which the lands were sold to the plaintiff,, and this sale is subsequent to his purchase; if, therefore, Douglass shall establish his legal title it is superior to this claim, consequently it need not be further noticed.
McCoy is the substantial defendant, and the merits of the ease are comprised in adjudging if he or Douglass possess the preferable right.
The title of both parties arises from Findlay. In 1797 the land was entered and surveyed by Massie, who sold lot No. 1 to McCoy in September, 1797. On June 24, 1807, McCoy conveyed it to Lamb, who, on July 13, 1812, conveyed it to Findlay. The other lot, No. 5, on June 20,1798, was conveyed by Massie to Ferguson, who conveyed it to Lamb on February 18, 1800, who conveyed it to Findlay on March 24, 1811. On December 31, 1814, after the death of Massie, a patent for the entry, which embraced these lands, was issued to his heirs.
On August 14, 1819, the mayor and corporation of Chillicothe recovered two judgments against Findlay, the executions of which were levied upon lot one and two-thirds of lot five. Sale was made to the judgment creditors under this levy in 1822, and in 1829 their interests were conveyed to the plaintiff. Jjhe judgments not being fully satisfied by the above sale, an execution was issued for the balance, which was levied on the remainder of lot one, and sold to Douglass. By these sales the plaintiff insists he acquired a title to the lands.
' McCoy’s title arises in the following manner: On June 27,1821, Findlay agreed to convey the land to him to indemnify him. against certain liabilities incurred before 1819. On June 28,1821, Findlay and wife conveyed to McCoy in execution of the above agreement. McCoy afterward, with the assent of Findlay, procured a deed from Wallace, a trustee appointed by the legislature, to convey the title of Massie’s heirs, arising under the patent, to the purchasers of lands from their ancestor. The paper title of *McCoy does not rise until after the entry of the judgment upon which Douglass’ title depends. To impugn that with success it is necessary to show that there was no valid judgment, or that no interests of Findlay’s were bound by its lien, or that the pro *480 ceedings under the execution were so irregular as to confer no title upon the purchaser.
It is objected that no judgment is shown. There is no transcript of a complete record, no process, no pleadings; but a copy of the court journal is shown, in which, after giving the name of the case, it is stated that the parties' appeared and submitted the ease to the court, who entered judgment for the plaintiff, etc. Undoubtedly the judgment is erroneous, and would be reversed upon, error, but it is not void. A judgment confessed in open court,, without process of pleading, is valid. 3 Ohio, 273. The judgment of a court of competent jurisdiction over the parties and subject, however irregular and summary, can not be treated as a nullity. 3 Ohio, 305; 4 Ohio, 327. The validity of such a proceeding is only open to inquiry upon error or certiorari.
The defects in the levies give rise to the next class of objections..
The levy returned upon the first execution is upon “out-lot No. 5, and two-thirds of lot No. 1,” and it is insisted that it is void for uncertainty. No doubt such return is defective; it was so holden in Lessee of Mathews v. Thomson et al., 3 Ohio, 272, but it was there adjudged that the defect might be supplied by parol. This proof is before us; the order of confirmation identifies the land as “part of the lot which lies south of the garden,” which description is carried into the deed. Perhaps this would lead theeourt, in absence of contradictory proof, to presume, if necessary, that the part conveyed was the part appraised, and was duly described in the advertisement. But the testimony of Clifford, the sheriff, satisfactorily shows that the appraisal was properly made upon the part conveyed, and it is probable that a specific return was made upon another paper, one attached to the writ, but since lost.
The levy of the second execution is upon “ the north side of lot No. 1, in the occupancy of Findlay.” The appraisement and sale is of “nine poles from the north end of lot ^No. 1, fronting on Paint street, and running the whole width of said lot, on Fifth street, being the yard, garden, and improvement inclosed.” Ve find no ground of uncertainty here.
The sale, the one in which Douglass was the purchaser, was-made to satisfy, not only the balance of the judgments, in which the mayor and commonalty of the town of Ohilicothe had recovered against Findlay, but likewise the amount due upon two other *481 judgments. Evans recovered a judgment against Findlay, in Boss common pleas, on November 8, 1820. Fi. fa. was issued upon this, July 21, 1824. The Bank of Chilicothe recovered a judgment against Findlay, on August 29, 1820, upon which afi. fa. was issued, September 18, 1824. Both executions were levied upon the land, while held by the execution of the judgment, of the mayor, etc., of town of Chillicothe.. The objection now taken is, that although the avails of the sale were appropriated upon three judgments, yet the return shows no levy, appraisement, or sale, except upon the latter. But it will be observed that the land stood levied upon, by the former executions upon the judgment, recovered by the mayor, etc., of Chillicothe, when the vendi. was issued, by which it was sold. The date of this vendL was July 26, 1824; the appraisement was made under it. The fi. fa., upon the Evans judgment bears date on the 21st of July, and was delivered to the sheriff on the 27th July. The fi. fa. upon the bank judgment was issued, and delivered to the sheriff on the. 18th of September; so that on the 20th of September, the'day of sale, he had execution upon these three judgments, all liens upon the land. The advertisement was regularly made, and no act was omitted to bring the property to a fair sale. Under these circumstances, separate proceedings, under each execution, were unnecessary, and independent appraisals might tend to perplex the title. The duty of the sheriff was well executed by an appraisal and sale under one, and an appropriation of the surplus to the others. ‘
But the strongest reliance of the defendants’ counsel is upon the position that Findlay never had any interest in the land, except in equity, which could not be reached by ^execution. It is necessary that this objection be removed before we can administer to the plaintiff the relief he asks. The title of Findlay was derived from Massie, while he held the land by entry and survey only; no patent was issued, except to his heirs, after his death. It is assumed that the heirs, acquiring a title under these circumstances, took by purchase, not by descent; that the covenant of warranty by the ancestor works no estoppel; and therefore, that the title acquired -by Massie’s heirs, does not inure to Massie’s purchasers. This point has been heretofore adjudged in this court, in a case arising under the same patent, Bond’s Lessee V. Swearengen, 1 Ohio, 395 and the opinion there expressed by *482 the court is, “that Massie, after his entry and survey, might dispose of the lands; and when a patent was afterward issued, either to himself or hi3 heirs, by which the legal title became perfect, it inured to the benefit of his grantees, so as to make their title .good.”
This decision is the subject of severe criticism by the counsel for the defendant, and the most strenuous efforts are made to induce the court to overrule it. But no case ever decided here has been the subject of more anxious and careful investigation. The judges who decided it, with the opportunities they had, and the «are they bestowed, were little liable to be-misled. The present members of the court, after examining the arguments of counsel, and the reasoning in the report, fully acquiesce in the opinion of the court, as there expressed, and regard the point decided as a .-settled rule of property in Ohio.
The counsel for the defendant set up an equity in McCoy earlier than any right accruing to the plaintiff. It does not. arise from the deed from Findlay to McCoy, for that bears date in June, 1821, and is overreached by the judgment; nor from the agreement, since it was made but the day before; but he relies upon the fact, that McCoy incurred liabilities for Findlay, prior to 1821, which Findlay ought to indemnify. Undoubtedly this imposes upon Findlay the moral obligation to save him harmless, but no such specific, perfect right as a court of equity can enforce.
The claim to the surplus money can not be settled in this suit. If any remain in the hands of the sheriff, let it be ^claimed from him. The judgments are satisfied by the sale, and it is a matter of no-importance, to McCoy or Findlay, if the purchaser has paid or not.
Another point made by the defendant is, that by Findlay and wife joining in the deed to McCoy, her dower at least passed by the deed; and as Findlay is now dead, McCoy may set it up as a bar to the plaintiff in this suit. But we consider it no obstacle to a decree against McCoy. Although the deed from Findlay and wife to McCoy extinguished the right of dower in the land conveyed, it was not intended to pass, nor did it pass the right of -dower as a separate substantive estate,'if no lands were conveyed by the deed, for the law will not permit the alienation of such possible contingent interests. 4 Kent’s Com. 254; 9 Mass. 143. Neither can it be aliened before assignment, so as to enable the *483 grantee to maintain a suit in her own name, for it lies in action only. 17 Johns. 167.
The facts, in the opinion of the court, show the plaintiff holds the legal title and the possession of the land, and is, therefore, entitled to the decree. The statute in such case imperatively gives costs. 29 Stat. 83; Id. 14.
In this determination we place no weight upon the number of ■trials, in which the parties to this suit' have litigated their right to the land. In the English chancery, a bill of peace is not determined, unless the rights of the parties are satisfactorily established .at law, by more trials than one. Ours gives the remedy in all cases where the title and possession meet in the same person.
Decree against all the defendants, except Mrs. Eindlay.