## CHARLESTON.

### NICKELL v. TOMLINSON et al.

Submitted January 14, 1886.—Decided February 20, 1886.

1. The effect of a wife uniting with her husband in a deed conveying the absolute fee simple in land is not to vest in the grantee any estate *separate and distinct* from her husband but simply to relinquish a *contingent* right of dower, in the nature of an incumbrance upon the land conveyed, which, if not relinquished, would attach and be consummate on the death of her husband. (p. 708.)

2. But such relinquishment of her contingent right of dower will only operate against her in favor of the grantee or those claiming title under him; and it will never operate in favor of a stranger not claiming under such grantee; and as against such stranger she may claim her dower, though she has united in such a deed with her husband. (p. 712.)

3. If a man die leaving no issue, and he be seized of a defeasible estate in fee simple determinable by an executory devise over, on his death without leaving issue his widow may be endowed of such land; for on the husband's death not leaving issue but leaving a widow surviving him this defeasible estate of the husband is continued, so that the widow may be endowed of such land. (p. 705.)

4. If a husband by a deed, in which his wife united, and which was acknowledged, certified and duly recorded as to both husband and wife, as required by our statute ch. 73 of the Code, conveyed to a purchaser and his heirs forever the land, in which he had such defeasible estate in fee simple, which was determined by his death without issue, if he leave a widow, the vendee in such deed is entitled to have the widow's dower in said land laid off and to hold it during the life of the widow. (p. 721.)

*J. W. Harris* for appellants.

*Hereford & Hereford* and *A. N. Campbell* for appellee.

88

Statement of the case by Green, Judge:

William Dunsmore, Sr., a resident of Monroe county, then in the State of Virginia now in the State of West Virginia, died in 1860 leaving a widow Sarah Dunsmore, who died in 1865 leaving four sons, William Dunsmore, Jr., Jacob H. Dunsmore, Charles Lewis Dunsmore and James Alexander Dunsmore, and three daughters, Eliza F. Vines, Catharine Tomlinson and Mary Couch, who died in 1881 intestate leaving six children her heirs, two of whom have since died intestate leaving children, and William Dunsmore, Jr., also died intestate in 1882 leaving six children his heirs, and Catharine Tomlinson, who is still living, having ten children and Eliza F. Vines, still living, having ten children. All of these parties now living are defendants in this cause as well as the personal representatives of the deceased parties and the husbands of said females and Mary C. Dunsmore, the widow of Jacob H. Dunsmore, who died intestate on March 17, 1882, leaving no children. Shortly before his death on March 9, 1860, William Dunsmore, Sr., made his will and after devising certain of his lands to James Alexander Dunsmore, one of his sons, he devised all the remainder of his lands including his wife's third after her death to his son Jacob H. Dunsmore and qualified his devise by adding thereto : " If my son Jacob H. Dunsmore should die without having heirs, he shall divide the land between his sister's heirs as he may think proper."

On March 12, 1872, Jacob H. Dunsmore and Mary C. Dunsmore his wife conveyed with general warranty of title to Samuel W. Nickell, the plaintiff in this cause, and his heirs forever in consideration of $7,961.72 paid and to be paid, a tract of land containing 207 acres in Monroe county West Virginia described by metes and bounds, which he had agreed to purchase of Jacob H. Dunsmore on May 10, 1871, and of this purchase-money at the time of the purchase he paid him $2,500.00 in cash, and when the said deed was made gave him his bond for $2,807.00 with interest from May 10, 1871, payable May 10, 1873, and he also for the residue of the purchase-money $2,653.74 with interest from May 10, 1871, gave his bond to Samuel A. Clark trustee for said Mary C. Dunsmore wife of Jacob H. Dunsmore payable

May 10, 1876. For these deferred payments the vendor's lien was reserved in said deed, and they were afterwards in the lifetime of Jacob H. Dunsmore paid, and the proceeds of this bond payable to Samuel A. Clark, trustee of Mary C. Dunsmore, was invested in a tract of land for her sole and separate use. She refused to join in the said deed conveying said tract of 207 acres of land to Samuel W. Nickell and his heirs, till it was agreed, that the amount of the purchase-money above named, ($2,653.74,) was to be paid with interest as aforesaid to her for her sole and separate use. This 207 acre tract of land was the land, which was devised to Jacob H. Dunsmore by his father with the qualifications of the devise as above stated.

This deed of March 12, 1872, was duly acknowledged before a justice of Monroe county by both Jacob H. Dunsmore and his wife Mary C. Dunsmore, and such a certificate of this acknowledgment, as is required by our statute-law, was appended to the said deed; and on March 10, 1872, it was duly recorded.

When Jacob H. Dunsmore died, March 17, 1882, intestate and leaving no children, the children of his three sisters claimed, that they were entitled to this tract of land under the will of William Dunsmore, Sr., as it was as they claimed, so devised to Jacob H. Dunsmore, that he had in this tract of land but an estate in fee. defeasible upon his dying intestate without issue, and having failed to divide it among them as he was empowered to do, it went to them by law, one undivided third to the children of each of his sisters, whether these sisters were living or dead at the death of Jacob H. Dunsmore. Samuel H. Nickell, who had been in the possession of said tract of land, since he purchased it, claimed by virtue of the deed to have a fee simple absolute in this land and refused to give it up; and thereupon said claimants in February, 1883, brought an action of ejectment against Samuel W. Nickell in the circuit court of Monroe county claiming said land in fee. The facts were agreed, and the case submitted to the court in lieu of a jury; and on June 6, 1883, the court rendered a judgment in favor of the plaintiffs in accordance with their claims, as above stated.

Samuel W. Nickell obtained a writ of error and *supersedeas*

to this judgment; and this Court on April 19, 1884, decided the case. (See 24 W. Va. R. p. 148.) This Court was of opinion that by this will of William Dunsmore, Sr., Jacob H. Dunsmore took in this tract of land an estate in fee simple defeasible upon his dying without children, and that the authority was given him, if he so died without children, to divide this land among his sisters' heirs, as he might think proper ; and that, as he had failed to exercise this power, one undivided third part of this tract went to the heirs of his deceased sister Mary Couch, and the remaining undivided two thirds of this tract of land went to the heirs of the testator William H. Dunsmore, Sr., being undisposed of by the will under the events, which had happened, till the death of Catharine Tomlinson and Eliza F. Vines the other sisters of Jacob H. Dunsmore, and that these undivided two thirds of said tract of land the heirs of William Dunsmore, Sr., held, until the death of said Catharine Tomlinson or Eliza F. Vines, when one undivided third thereof would go in fee simple to the heirs of the sister first dying, and the other undivided third would be held by the heirs of said William Dunsmore, Sr., till the death of the survivor of these two sisters, and then the remaining undivided third would go to the heirs of said surviving sister in fee simple. The judgment of the court below was therefore reversed, and this Court would have rendered a judgment in accordance with these views against the defendant Samuel W. Nickell, except that the facts agreed did not show definitely, who were the children and heirs of Eliza F. Vines the deceased sister. The case was therefore remanded to the circuit court of Monroe county, and it, I presume, promptly rendered a judgment in accordance with the views of this Court.

Being thus ousted from this tract Samuel W. Nickell brought this chancery suit in the circuit court of Monroe county against all of said parties, who under said opinion of this Court in this ejectment suit (see 24 W. Va., p. 148,) had title to said tract of land including the husbands of the females and the personal representatives of such as were dead and Mary C. Dunsmore, the widow of Jacob H. Dunsmore. After setting out their title to said tract of land and filing with his bill as exhibits a copy of said will of William Duns-

more, Sr., and of the deed of Jacob H. Dunsmore and Mary
C. Dunsmore, his wife, of date March 12, 1872, conveying
said land to him in fee and the certificates of the proper ac-
knowledgment and recordation of said deed by the husband
and wife and substantially the material facts above stated, his
bill proceeds and concludes as follows:

"This plaintiff further states that by virtue of said deed
from Jacob H. Dunsmore and M. C. Dunsmore, his wife, he
became the owner of said real estate during the lifetime of
said Jacob H. Dunsmore, and also after his death by virtue
of said deed said M. C. Dunsmore conveyed to this plaintiff
her possible future right to have laid off to her one third in
value or one third of the said real estate during the lifetime
of said M. C. Dunsmore. Said M. C. Dunsmore, never hav-
ing a child by her said husband, is still living; that at the
time of the death of said Jacob H. Dunsmore, which took
place on March 17, 1882, said real estate was of the value of
$9,000.00; that said Jacob H. Dunsmore died on March 17,
1882, without ever having a child born to him; that said M.
C. Dunsmore, widow of said Jacob H. Dunsmore was at the
time of the death of her said husband of the age of — years,
and is now of the age of fifty years.

"Plaintiff further states that the value of said dower inter-
est of said M. C. Dunsmore, wife of said Jacob H. Duns-
more, was at the death of her said husband of the value of
$————. This plaintiff asks that a guardian *ad litem* be as-
signed to the infant defendants herein, and that said guardian
*ad litem* answer this bill, and that one third part of the real
estate be assigned and set out to him during the lifetime of
said M. C. Dunsmore for his dower interest in the same, or
that he may have a decree for the value of said dower inter-
est, and that it may be decreed as a first lien upon the said
real estate, with interest thereon from the death of said
Jacob H. Dunsmore. And plaintiff prays for any other and
further and general relief as the nature of the case may re-
quire or to equity may seem meet and proper."

A guardian *ad litem* was appointed for the infant defen-
dants, who filed a formal answer; and all the other defen-
dants on March 17, 1885, filed their joint answer, which is
as follows:

"These respondents, for answer to said bill, say that it is not true that the said plaintiff paid to Samuel A. Clark, trustee for M. C. Dunsmore, wife of Jacob H. Dunsmore, the sum of $2,653.74 for her contingent right of dower in the land in the said bill mentioned; that it is not true that the said M. C. Dunsmore, by virtue of the deed to said plaintiff in the bill mentioned, conveyed to said plaintiff 'her possible future right to have laid off to her one third in value or one third of the real estate' in said deed mentioned 'during the lifetime of said M. C. Dunsmore;' that it is not true that said real estate was of the value of $9,000.00 at the time of the death of said Jacob H. Dunsmore; that they do not know what the age of said M. C. Dunsmore is, and if the fact of her age should become material, they call for strict proof, thereof, and that it is not true that the value of the dower interest of said M. C. Dunsmore was $——— at the death of her husband.

"And further answering, these respondents deny that at the time of the conveyance to S. W. Nickell of the land in the bill mentioned, said M. C. Dunsmore had any estate in said land whatever; they deny that by virtue of anything contained in the deed from Jacob H. Dunsmore and wife to said Samuel W. Nickell or otherwise the said Nickell become or is now invested with any right to have assigned and set out to him during the lifetime of said M. C. Dunsmore any dower interest in said land, or to have decreed to him the value of any dower interest."

These answers were replied to generally, and sundry depositions were taken, which proved substantially the material facts above stated. A number of depositions were also taken to prove the value of the land, when purchased by Samuel W. Nickell of Jacob H. Dunsmore, and its present value, and to what extent it had been enhanced in value by permanent improvements put upon it by Samuel W. Nickell, while he held possession of it, claiming title to it in fee simple by reason of said deed to him. I do not regard these depositions as of any importance in deciding this cause at this time on the questions presented to us now by this record, and therefore I do not state their contents. On June 30, 1885, the circuit court rendered the following decree:

" This cause came on June 2, 1885, to be heard upon the plaintiff's bill and exhibits therewith filed, the answer of the resident adult defendants, the answer of the infant defendants, by their guardian *ad litem*, M. J. Kester, and general replication to said answers, the process duly served upon all the resident defendants, order of publication duly executed by posting at the front door of the court house of Monroe county, and by publication in a newspaper published in said county as to the non-resident defendants, the depositions of witnesses taken and filed in the cause, and was argued by counsel. On consideration whereof, the court being of opinion that Samuel W. Nickell is entitled to be substituted to to the right of M. C. Dunsmore, the widow of J. H. Dunsmore, deceased, to have dower assigned to her in the lands in the bill and proceedings in this cause mentioned of which the said J. H. Dunsmore was seized of an estate of inheritance during the marriage with said M. C. Dunsmore, it is therefore adjudged, ordered and decreed that Hugh Caperton, George G. Young and George W. Hutchinson, who are hereby appointed commissioners for the purpose, who, after being first duly sworn, do go upon the land in the bill and proceedings in this cause mentioned and allot and assign to Samuel W. Nickell, by metes and bounds, one equal third part in value of said land, having regard to quantity and quality as and for the dower of the said M. C. Dunsmore in the said lands, and to be held by said S. W. Nickell during the life of said M. C. Dunsmore. And the said commissioners shall employ a competent surveyor, who shall lay off said land and make a plat thereof. And this decree is suspended for sixty days to allow an opportunity to apply for an appeal, a suspending bond being waived by the parties."

From this decree an appeal and *supersedeas* have been granted to the defendants in this cause.

Opinion by GREEN, JUDGE :

There is really no controversy between the plaintiff and the defendants in this cause as to the material facts. The apparent conflict is in the legal deductions, which they draw from the facts, which are stated in the bill and answers, as if they were facts. Hence the apparent conflict between them.

The depositions show, that on May 15, 1871, the plaintiff below purchased of Jacob H. Dunsmore in fee simple the farm in Monroe county of 207 acres, in which this Court decided in *Tomlinson* v. *Nickell*, (24 W. Va. 148) that Jacob H. Dunsmore did not have an absolute fee simple but only a fee simple determinable by an executory devisee over upon his dying without children. The wife of Jacob H. Dunsmore refused to join with her husband in a deed to Samuel W. Nickell and his heirs, unless there was given to her. as her sole and separate property about one third of the purchase-money. This was agreed to, and thereupon she executed with her husband on March 2, 1872, a deed conveying this farm to Nickell and his heirs with general warranty of title and Nickell paid Dunsmore in cash and subsequent to the execution of the deed about two thirds of the purchase-money and the remainder of the purchase-money according to this agreement he paid to a trustee for the use of the wife of Dunsmore; and it was invested in a home for her sole and separate use. This one third of said purchase-money the bill speaks of as so much money paid by Nickell for her contingent right of dower, which the answer denies. But the depositions show, that the denial is really only that the above undisputed facts amount in law to a payment by Nickell of this one third of the purchase-money for her contingent right of dower. According to the view I take of the case it is immaterial, whether it was or not.

So the answer denies that Mary C. Dunsmore by virtue of this deed conveyed to Nickell her. possible future right to have laid off to her one third in value of the farm. This is a simple denial of a legal deduction. There is no question but that she and her husband did execute the deed conveying the farm to Nickell and his heirs forever and that this deed was acknowledged and certified by a justice of said county in the form required by our statutes by both her husband and herself and was duly recorded. This is not disputed. The answer denies, that this farm was worth as much as the bill alleges it was. But its worth is immaterial for the decision by this Court of the questions at present involved in this cause; so too the age of Mary C. Dunsmore the widow of Jacob H. Dunsmore is for these purposes at present im-

material. There is no question of fact necessary for this Court to determine, and but two questions of law.

The first of these is, whether, Jacob H. Dunsmore the husband having died seized of an estate in fee in this land determinable by an executory devisee over upon his dying without children, his widow was entitled to dower in said estate. The other question is : If she was entitled to dower in said land, did she by uniting with her husband in the deed of March 12, 1872, conveying this land to the plaintiff in fee simple and by acknowledging said deed and having it certified and recorded in the manner prescribed by our statute law confer on the purchaser her right to have her dower in this tract of land laid off to him ?

Both these questions were decided by the circuit court of Monroe county in the affirmative by the decree of June 3, 1885, appealed from by the defendants. · The appellants admit, that the first of these propositions was correctly decided by the circuit court, if we exclude from consideration the effect produced on the question by Mary C. Dunsmore the widow having united with her husband in the deed of March 12, 1872, conveying this land in fee simple to Samuel W. Nickell, which they insist extinguished her right of dower. Of course, if this be so, the second question must be answered in the negative, and the decree entered by the circuit court must be reversed.

There are three Virginia cases, which, if we leave out of consideration the execution by the wife of the deed of March 12, 1872, expressly require the first question to be answered in the affirmative. The first of these cases is *Taliaferro* v. *Burnett*, 4 Call 321, in which the court expressed no opinion but assumed as well settled law, that in such a case as the one before us the widow was clearly entitled to dower, when she had not joined in any deed barring her of her claim to dower. This was followed in *Jones* v. *Hughes*, 27 Gratt. 560 and *Medley* v. *Medley*, 27 Gratt. 568.

In *Jones* v. *Hughes* the subject was considered, and the decided cases were reviewed, and because after a full review of the subject by Scribner in his work on dower he concluded, that " there seems to be a marked distinction between a case, where by the terms of the limitation the husband takes a fee

89

simple estate, which, if he have issue living at his death, will descend to such issue, and which is limited over only in the event of his death *without issue*, and other cases of conditional limitation," the court of appeals of Virginia without admitting that such distinction existed thought proper to confine their decision and opinion to the case before them, that where the husband died seized of an estate in fee determinable by an executory devisee over upon his dying *without issue*, his widow was entitled to dower in said estate, this being all that was necessary to be decided in that case. And as it is unnecessary for us to express any opinion in this case as to whether there is or is not the marked distinction between such case and other cases of conditional limitation, as Scribner thinks there is, we leave it to be considered, when it becomes necessary to be decided, and like the Virginia court of appeals we will confine our decision strictly to the case before us, simply remarking that nearly all the cases, which have been before the different courts, have in this respect resembled the case before us and those, which have been before the court of appeals of Virginia. But this distinction, if it exists, has not been remarked upon in deciding the causes generally.

In *Tomlinson* v. *Nickell*, 24 W. Va. p. 158–160, I expressed my views on this question, and like others I expressed them, as though the law, which governed, when the limitation over was only in the event of the husband's death *without issue*, did not differ from limitations over of other kinds. But this expression of opinion is a mere *obiter dictum* and made without any examination of the subject, the law as stated by me being admitted to be correct law by the counsel on both sides in that case as in this.

The overwhelming weight of authority both in England and in this country is in favor of the doctrine, that the widow has a right to dower, when the husband's fee simple estate is determined by an executory devise over upon his dying without issue, and the husband is entitled to curtesy, when the wife's fee simple estate is determined by an executory devise over upon her dying without issue. [See *Samuels* v. *Paynes*, 1 Leon. 167 ; S. C. 1 Aud. 184 and 8 Coke 34a ; *Goodenough* v. *Goodenough*, 2 Dick. 795 ; *Buckworth* v. *Thirskell*, 3 Bos. &

Pul. 652 note; *Moody* v. *The King*, 2 Bing. 447 (9 Eng. C. L. R. 475); *Barker* v. *Barker*, 2 Sim. 249 (2 Cond. Eng. Ch'y. 406); *Smith* v. *Spencer*, 6 De G. M. & G. 631; *Evans* v. *Evans*, 9 Brew. 190; *Northcot* v. *Whipp*, 12 B. Mon. 65; *Milledge* v. *Lamar*, 4 Dessaus. 617–637; *Hatfield* v. *Sneden*, 54 N. Y. 280; *Talliaferro* v. *Burwell*, 4 Call 321; *Jones* v. *Hughes*, 27 Gratt. 560; *Medley* v. *Medley*, 27 Gratt. 568.) There are in opposition to these decisions some few opinions and a few decisions. (See *Flasille* v. *Ventrice*, 2 D'An. 655; 9 Vin. Abr. 217 F. p. 61; *Sumner* v. *Partridge*, 2 Atk. 47; Lord Alvanley in *Doe* v. *Hutton*, 3 Bos. & Pul. 653; *Weller* v. *Weller*, 28 Barb. 588, and *Edwards* v. *Bibb*, 54 Ala. 475.) In the first of these cases the court was equally divided; and the second was, it is believed, not really in conflict with the cases first cited but only apparently so. See *Barker* v. *Barker*, 2 Sim. 449 (2 Cond. Eng. Ch'y R. 406).

But, though the overwhelming weight of authority both in England and in this country support the views, which I have above expressed, they have been nevertheless strenuously opposed by many excellent text-writers. (Park on Dower, 179; Sugden on Powers, 338; Appendix No. 2 of Jacob's Roper on Husband and Wife, vol. 2, p. 502; 1 Bright on Husband and Wife, 35 and 349; But. Coke on Litt. 241 a note.) Other text-writers apparently avoid expressing any opinion on this question. (Burton Real Prop. § 856; 3 Pres. Abs. 375.) Other distinguished text-writers unhesitatingly support the views which I have above expressed. Jarman on Wills, 792; 1 Roper on Husband and Wife, 38–43 and 377; Bissett Est. for Life, 82–87; 2 Crabb Real Prop. 167; Bishop on Married Women, vol. 1, Book 2, ch. 9, secs. 312–313; Minor's Inst. vol. 2, pp. 116 and 133.) Scribner on Dower while sustaining these views obviously thinks, that many of the cases cited above have gone too far in giving to a widow dower in defeasible estates in fee, of which their husbands had been seized.

As Mary C. Dunsmore would have been entitled to dower in this land, the next enquiry is : Did she, when she executed with her husband the deed of March 12, 1872, conveying this land in fee simple to Samuel W. Nickell, and when this deed was acknowledged, certified and recorded as our statute-

law required, thereby extinguish her right of dower, or did she thereby convey this right of dower (in the contingency which has happened, that is, the death of her husband without children) to Nickell, so as to authorize him to claim, that her dower should be laid off for his use to be held by him during her life; or did her uniting in this deed under the contingency, which has happened, render it entirely inoperative either to extinguish her right of dower or to transfer it in law or equity to the vendee ?

To determine the effect of her uniting in this deed upon her contingent right of dower, more properly called her inchoate dower-interest, we will first endeavor to determine as definitely, as we can from the decisions of the courts, the nature and qualities of this inchoate dower. First it is recognized by the courts as an *incumbrance,* and of itself it works a technical breach of the covenant against incumbrances. This was at one time controverted; but it may now be regarded as settled law. It has been sometimes said, that this inchoate dower-interest is a possibility capable of being released, "but that in no sense is it an interest in land." (*Moore* v. *City of New York,* 4 Selden.) But if it be a recognized present incumbrance on land, it would seem, that it must in some sense be regarded as an interest in land. The pecuniary value of this inchoate dower-interest can be calculated, though its value is dependent on two contingencies, first on the wife's surviving her husband, and secondly, on the length of time she lives after the death of the husband. But tables have been made, by the use of which the pecuniary value of this inchoate dower-interest may in any particular case be calculated with but little trouble. Such a table may be found in Appendix H. to Scribner on Dower, vol. 2, pp. 818, 817. It has been held in accordance with these views, that, if a wife unite with her husband in conveying a tract of land thereby surrendering for his benefit her inchoate dower-interest, this is a consideration, which would sustain a conveyance for her sole separate use of land to the extent of the value of this interest. (*Quarles* v. *Lacy,* 4 Munf. 251; *Bullard* v. *Briggs,* 7 Pick. 533.) In this last case it was said that this inchoate dower-interest "is more than a possibility, and may well be denominated a *contingent interest.*"

But it certainly is not an *estate* in lands, either vested or contingent, nor indeed a *vested* interest in lands. (*Tomlinson* v. *Nickell,* 24 W. Va., point 4 of syl., pp. 149 and 160.) Yet it is a substantial right possessing some of the attributes of property and to be valued as such. This interest could at common law be neither sold, conveyed nor released. These results would perhaps follow from the nature and qualities which attached to this interest, it being in many respects different from any other property-interest in land. But be this as it may, the fact, that this inchoate dower-interest necessarily belonged to a wife, would because of the common law incapacity of a married woman to make any contract necessarily render it incapable of being sold, conveyed or released.

Thus the inchoate dower-interest of a wife, while it did not render estates in fee simple inalienable, put upon them an incumbrance, which, as it could in no manner be removed during the life of the fee simple owner, necessarily embarrassed the alienation of such fee simple estates ; and by the statute *de donis,* out of which grew estates tail such estates were inalienable. This inalienability of estate tail and this embarrassment in alienation of many fee simple estates were crying evils, which the courts got rid of by contrivances, the design of which was laudable, but the means used were such as we can not admire. The very fact that the courts resorted to such means to get rid of it shows how great they regarded this public evil. The contrivances, which were resorted to escape these evils when applied to lands owned by husbands in fee simple, which they wished to alienate free from the incumbrance of the inchoate dower-interest of the wife were briefly stated as follows :

A suit was instituted by the purchaser against the husband, the fee simple owner of the land, and his wife alleging either that he had covenanted to sell the land and violated his covenant, or that the purchaser was the fee simple owner of the land and had been unlawfully ousted therefrom by the husband, the real fee simple owner of the land. The case was by leave of the court either compromised by the defendants, the husband and wife, agreeing that the purchaser, the plaintiff, was entitled to the land in fee simple, or the defendants,

the husband and wife, or their voucher made default. In either case the court rendered a judgment for the plaintiff for the land in fee simple, and thus the wife's inchoate dower-interest was completely lost and buried, and the plaintiff had a fee simple estate in the land free from any incumbrance.

One of these modes was called a fine, the suit being *ended* by a pretended compromise. The other was called a common recovery. But to protect the wife the courts would personally examine the wife separate and apart from her husband to ascertain, whether she understood what was being done and was willing thus to surrender and relinquish her interest, that her husband might make this alienation of his fee simple land; and if her replies to their questions on such examination were satisfactory, they permitted this compromise or fine to be made or this common recovery to be had, and they entered judgment for the plaintiff, the purchaser, otherwise they would not.

In most of the original States of the Union at a very early day, when they were colonies, these pretended suits as means of removing the incumbrance on the husband's fee simple estate of this inchoate dower-interest of his wife were abandoned or abolished, and the legislatures provided, that it might be removed by her simply joining with her husband in a deed conveying the land to the purchaser and providing for a privy examination of her by a judge, justice, or some other designated person, such as the courts had formerly made. And the deeds being so acknowledged by the wife and also by the husband were duly recorded. And in fact without any legislation on the subject this mode of removing the incumbrance was adopted in a number of States; and such deeds were declared valid by subsequent statutes. This mode was doubtless suggested by the fact that it had prevailed in London by a custom recognized by the courts. Since 1748 in such cases a statute-law of Virginia has required a privy examination of the wife. In some of the States dower has been abolished by statute-law. In most of them however her dower is barred by conveyances of her husband in which she united generally accompanied by privy

examination but sometimes without privy examination of her.

On account doubtless of the difficulty of finding suitable words applicable to the barring of a widow's right of dower because of its peculiar nature and qualities and the difficulty of saying whether it was an interest in real estate or a possible contingent right the language used in the statutes of the different States and even in the same State in describing, how this right of dower was to be barred by her joining in a deed with her husband, has varied very much. In some States the statute provides, that by so doing she shall bar her right of dower; in others that by joining with her husband in the conveyance and acknowledging the deed this effect shall be produced, without using other words. In some of the States the statute provides, that she may thus *release* her right of dower; in others that she may *relinquish* her right of dower. In some it is declared that such joining with her husband shall *pass* her right of dower and in some that it shall operate to *convey* her right of dower. The most appropriate language to effect the purposes intended is perhaps that contained formerly in the statute-law of Georgia, which declared that such deed by husband and wife " shall be good and effectual against husband and wife their heirs and assigns, and against all other persons whatsoever claiming under said husband and wife or either of them, to all intents and purposes as it the same had been done by fine or recovery or by any other way or means in law." (Cobb's Dig. of Laws of Ga. p. 161.) This act was originally passed in 1760.

The reason why fines and recoveries are not referred to as intended by such laws to be done away and their effect produced in this simpler mode in all modern statutes is no doubt the fact, that the effect of a fine or recovery in such case has become to a great extent unknown to the masses of our people; and hence in modern statutes this effect is without reference to those ancient modes sought to be produced in very various language. But however worded and without much reference to the particular wording of such statutes in every particular State there has been a considerable uniformity in the decisions of the courts in reference to the effect produced on the dower by a husband and wife uniting in a deed and

complying with the provisions of this particular statute-law. It may be regarded for instance as well settled, that a widow may claim her dower after her husband's death, if the lands in which her husband was seized in fee simple at any time during the coverture, are owned by any person other than one, who was the grantee in a deed, which had been thus executed by her and her husband, or by one not claiming title under such grantee, though the statute-law may have said that by such deed her right of dower should be barred or relinquished or released, or though in accordance with the statute-law such language was used in the deed. (*Pixley* v. *Bennett*, 11 Mass. 298; *Robinson* v. *Bates*, 3 Metc. 40; *Littlefield* v. *Crocker*, 30 Me. 192; *Harriman* v. *Gray*, 49 Me. 537; *French* v. *Crosley*, 61 Me.; *McClung* v. *Walker*, 65 Me. 172; *French* v. *Lord*, 69 Me. 537; *Taylor* v. *Fowler*, 18 Ohio 567; *Carter* v. *Walker*, 2 Ohio St. 339; *Woodworth* v. *Paige*, 5 Ohio St. 70; *Kitzmiller* v. *Van Rensalaer*, 10 Ohio St. 63; *Blaine* v. *Harrison*, 11 Ill. 384; *Summer* v. *Babb*, 13 Ill. 483; *Gore* v. *Cather*, 23 Ill. 634; *Harrison* v. *Eldridge*, 2 Hals. 392; *Ricard* v. *Tulbird*, Rice Eq. 158; *Pinson* v. *Williams*, 23 Miss. 64; *Randolph* v. *Doss*, 3 How. (Miss.) 305; *Gray* v. *McCune*, 23 Pa. St. 447–451).

In most of these decisions no reference is made to the wording of their statute-law showing that the courts have been but little influenced by the wording of the statute-law but have been controlled in their decisions much more by the spirit of the law, the purpose and object with which such statute-law was passed. If construed literally the statute-law in many States, where these decisions have been rendered, was apparently in conflict with the decisions. To illustrate this I will point out the language used by the court in some of these cases. Thus in *Bixley* v. *Bennett*, 11 Mass. 298, a writ of dower *unde nihil habet*, the tenant relied as his defence upon a deed to Lee & Edwards, under whom the tenant did not claim, whereby there was conveyed to them all her right of dower. It was claimed by counsel " that having once released her claim, she is forever estopped to demand dower, whoever may be in possession of the land." The whole opinion of the court is : " The deed relied on to bar the demandant shows no privity of estate, or connection of any kind be-

tween her and the tenant.   It can not avail the tenant in this action."

*Robinson* v. *Bates*, 3 Metc. 40, was a writ of dower.   The tenant relied upon a deed of the premises from the husband and wife, the demandant, to one Jacobs, under whom tenant did not claim.   The court say :  "The tenant's counsel contended, that as the demandant had once released her claim, she was forever estopped to demand dower, whoever may be in possession of the land.  But it is very clear, that a stranger can not be bound by or take advantage of an estoppel.   An estoppel to be binding must be reciprocal, and parties and privies only are bound thereby."

*French* v. *Crosley and others*, 61 Me. 504, was also a writ of dower.   The court say :  "All the matters necessary to establish her right are admitted or proved, unless she is bound by reason of having released her dower in a deed including the premises from her husband to a third party given subsequently to the attachments in the suit, wherein the levies were made, under which the defendants claim.   The title of the grantee in that deed never came to these defendants, yet they claim it shall inure to their protection by way of estoppel.   It was properly ruled otherwise by the court below."  No reference is made to their statute, which declared that "a married woman may bar her right of dower in an estate conveyed by her husband by joining in the same deed."

*Kitzmiller et al.* v. *Van Rensalaer*, 10 Ohio St. 64 was a bill in chancery by a widow claiming dower against defendants, who claimed the land under a judicial sale made to satisfy a debt of the husband.   While the judgment was a lien on the land and before the judicial sale, the wife joined with her husband in a duly executed conveyance of the land with full covenant of warranty releasing her dower therein to George and Eli Raudabaugh, who went into possession but were subsequently evicted under the superior title of the defendants as purchasers at the judicial sale.   The court say : "The question before us is : Did the court of common pleas err in this state of facts in decreeing dower to the claimant?   By the death of the husband and his *seisin* during coverture she made a perfect *prima facie* case.   The defendant below seeks to protect himself under her release of dower to the Raudabaughs,

or in some way to make the same operative in his behalf. But the defendant has never possessed himself of the title, such as it was, of the Raudabaughs; he is not in privity with them; he does not claim under them but under a title paramount and adverse to theirs; and in all the proceedings, under which this title accrued, they and their title were, as they lawfully might be, utterly ignored. He can not make the release available to him as a grant, for he was not a party to the grant, nor is he in privity with the grantees. The release can not operate, in behalf of the defendant below by way of estoppel; for a stranger can not be bound by nor take advantage of an estoppel. An estoppel to be binding must be reciprocal; parties and privies only are bound thereby. *Robinson* v. *Bates*, 3 Metc. 42; *Pixley* v. *Bennett*, 11 Mass. 298." The court does not refer to the Ohio statute; but from its reasoning it is obvious that the same conclusion would be reached, whether the statute had been so worded that her joining with her husband in the deed operated to grant or convey her inchoate dower-interest or to release it or to bar her of her dower.

This cause and the others above cited conclusively show, that in the case before us none of the defendants below can claim any sort of benefit from the deed dated March 12, 1872, executed by Jacob H. Dunsmore and Mary C. Dunsmore, his wife, for the 207 acres of land, whether we regard this deed as relinquishing or releasing her inchoate right of dower or as conveying it. And however our statute-law may be construed, these defendants can derive no benefit from this deed; for they with the exception of Mary C. Dunsmore were entire strangers to the deed. They were not in privity with the grantee, Samuel W. Nickell, do not claim under him but under a title paramount and adverse to his. They can not make this deed available to them as a grant for they were not parties to the grant; nor are they in privity with the grantee; nor can the deed operate in their favor by way of estoppel, for as strangers they can not be bound by nor take advantage of an estoppel, if this deed would so operate. Of course this deed can not be of benefit to Mary C. Dunsmore, as she was a grantor in it. We shall consider hereafter whether it is prejudicial to her. These conclusions must follow from these decisions and the reason-

ing on which they are based, whatever construction we give
to our statute-law.   And because they are thus independent
of the particular wording or construction of the statute-law
in the different States, the courts in most cases make no ref-
erence to their statute-law.   As by fine or recovery a wife
relinquished only her inchoate dower-interest so as to enable
her husband to sell his lands, in which he had a fee simple
interest, and of which he was seized during the coverture,
free from incumbrance of her inchoate dower-interest; and
by a fine or recovery the wife never sold her inchoate dower-
interest as an estate or as interest in land separate from her
husband's fee simple estate in it, and as her property, it
would seem reasonable to expect the courts without laying
much stress on the wording of the several statutes authori-
zing the barring of a wife's claim to dower by joining with
her husband, to hold that as those statutes were a substitute
for the cumbersome modes of conveyance by fine or re-
covery, they would hold under them, that a wife, who join-
ing with her husband in such a conveyance, is not a party
thereto except for the purpose of relinquishing her claim of
dower for the benefit of the grantee in such deed, and that
she would not be regarded as thereby alienating either a real
subsisting estate or an interest in the land, but simply as
releasing a future contingent right, and that this renuncia-
tion of her dower would, as it were, attend the conveyance of
her husband and endure, while it endured and no longer.

Accordingly we find that all the decisions, which I have
been able to find, no matter what the form of the statute in
the States, in which such decisions were rendered, have taken
this view of the effect of a wife uniting with a husband in
conveying his lands.   (*Clowes* v. *Dickison,* 3 Johns. Ch'y 235,
246 ; *Douglass* v. *McCoy,* 5 Ohio 522–527 ; *Blaine* v. *Harri-
son,* 11 Ill. 384 ; *Ricard* v. *Talbird,* Rice Eq. 158 ; *Fisher* v.
*Grimes,* 1 Sme. & M. Ch'y 107 ; *Robinson* v. *Bates,* 3 Metc.
40 ; *Stinson* v. *Summers,* 4 Mass. 143 ; *Summers* v. *Babb,* 13
Ill. 483 ; *Woodsworth* v. *Paige,* 5 Ohio St. ; *Pinson* v. *Wil-
liams,* 24 Miss. 64.)

To show that these decisions are not based on any particular
wording of the statutes in the States, in which they were ren-
dered, but on broad principles of the long established policy

of the common law, which would compel the adoption of these views, unless the statute of a State very clearly was intended to reverse and annul the spirit and policy of the common law and not simply to carry it out in an easy and convenient manner, I will refer to the language used in some of the above cases. In *Smith* v. *Lasher*, 5 Johns. Ch'y 247, the court say: "The wife's joining in the deed was only a release or bar of her future contingent interest. It was not an alienation of a real subsisting interest, which can now be the subject of computation or recognition. He took the lots discharged of that claim; and he has no right or interest which he can set up, as distinct from the title in fee. The right was extinguished and gone forever by the deed, and the title to the lots, in whomever it now resides, is held free and discharged from that claim." The last sentence in this opinion would apparently seem in conflict with the numerous decisions I have cited. But I suppose though confusedly, stated that the chancellor really meant that the "plaintiff's right as grantee in this deed was extinguished and gone forever by the deed, not the one signed by the wife but the deed to the defendant from the sheriff, and the title to the lots under this deed to the defendant, in whomever it now resides, is held free and discharged from that claim of the plaintiff based on the deed from the husband and wife." If this be the true meaning of the chancellor, it is in no conflict with the cases we have cited.

In *R. Douglass* v. *J. McCoy, &c.*, 5 Ohio 527, the court say: "Another point made by the defendant is that by Findlay and wife joining in the deed to McCoy her dower at least passed by the deed. And as Findlay is now dead, McCoy may set it up as a bar to the plaintiff in this suit. But we consider it no obstacle to a decree against McCoy. Although the deed from Findlay and wife to McCoy extinguished the right of dower in the land conveyed, it was not intended to pass, nor did it pass the right of dower as a separate substantive estate, if no lands were conveyed by the deed, for the law will not permit the alienation of such possible contingent interest. 4 Kent Com. 254; 9 Mass. 143."

In *Blaine* v. *Harrison*, 11 Ill. 385, the court say: "The right of dower in a married woman is a mere intangible,

inchoate, contingent expectancy, and even in a widow, until it is assigned her, it is no estate in the land, but it is a right resting in action only, and it can not be aliened". (The court ought to have said, so as to pass any legal title or right, but it might be assigned I suppose so as to bind the widow in a court of equity). The court then proceeds: "The widow may release her dower, so as to bar herself of the right of asserting it but she can not invest any one with it. She alone can get it assigned. *Szymore* v. *Mertum*, 17 Johns. 167; *Jackson* v. *Aspill*, 2 Johns. 412. A widow can not lease her right of dower before it is assigned even to the owner in in fee. *Croade* v. *Ingraham*, 13 Pick. 33. It can not be sold under an execution; and when that was done it was held to be no satisfaction of the judgment. *Gouch* v. *Atkins*, 14 Mass. 378. So that neither by the process of the law, nor by the voluntary act of the doweress herself, can the right of dower be transferred, so as to vest the right to have it assigned in another. If she can confer no right, she can not part with any. She may release this right it is true, but only so as to unite it with the fee."

With reference to this statement of the law as to the power of the widow over her dower-interest, before it is assigned, I would say, that I have not examined the subject and can not say, that the court has not stated the power of a widow over her unassigned interest as less than it may be, but with the balance of the reasoning and the conclusion of the court I concur. The court proceeds:

"If the law is so jealous of right in a widow, when it has become fixed and certain by the death of the husband, as to hold her incapable of conveying it, with how much more reason may it forbid a wife from vesting in another her right, which is but a contingent expectancy. The former is supposed to be under no restraint and may generally do with her own as she will; the latter is incapable of parting with a right except in the particular mode authorized by law. But it is the nature of the right which renders it incapable of alienation. A wife, who joins in a deed with her husband, is not a party to the deed, except for the purpose of releasing her dower in the estate conveyed by the husband, and is not estopped from setting up a subsequent title. In *Walker* v.

*Griswold,* 6 Pick. 417 the wife had joined in the execution of a mortgage and the court said: 'The release was co-extensive with the mortgage; it extended no further, and, consequently, the right of dower continued, subject only to that incumbrance.' When the incumbrance ceased as to the estate mortgaged it necessarily ceased as to the right of dower. When the deed from husband and wife becomes inoperative as to the husband's estate, as being void having been made to defraud creditors, or when the purchase-money is recovered back for defect of title in the husband, dower is not barred by the deed. *Simson* v. *Sumner,* 4 Mass. 143; *Robinson* v. *Bates,* 3 Metc. 45. From the very nature of the right, a wife cannot dispose of her claim of dower, so as to separate it from the principal estate. The policy of the law forbids it. If a wife could alien her contingent claim of dower to one, while the husband sells the fee to another, or retains it himself, it would lead to intolerable embarrassments in the conveyance of estates. But we need not go to the common law or decisions of courts to find the rule. If any doubt could be otherwise entertained our statute we think has settled the question. By the common law a wife could only release her dower by joining her husband in levying a fine, where she has been examined by the judges apart from her husband. Our statute has substituted a similar mode of accomplishing the same object."

The court then proceeds to give the Illinois statute and show, that when properly construed it leads to the same conclusions above stated. The reasons given in this case, which have induced the courts to reach the conclusions I have stated above, are given so fully and satisfactorily, that I deem it unnecessary to state the reasoning of the courts in any of the other cases, to which I have referred.

It only remains to determine, whether these views are to be adopted and to control in this State as to the power of a wife to dispose of her inchoate dower-interest by joining with her husband in a deed conveying his land, or whether our statute-law so clearly confers on a wife so much greater power of disposition of her inchoate dower-interest, as will compel us to conclude, that it was intended that she should be given more power to dispose of such interest than was

conferred on her in other States by statute.  Our law provides :
" When a husband and wife have signed a writing purporting
to convey real estate " (provides for acknowledgement and
recordation) " and when admitted to record as to the husband
as well as the wife such writing shall operate to convey from
the wife her right of dower in the real estate embraced
therein, and pass from her and her representatives all right,
title and interest of every nature, which, at the date of such
writing, she may have in any real estate conveyed thereby as
effectually as if she were at said date an unmarried woman ;
and such writing shall not operate any further upon the wife
or her representatives by means of any covenant of warranty
therein contained."   (Code, ch. 73, secs. 4, 5 and 6, pp. 670–
671.) This law was taken literally from the Code of Virginia
of 1849, ch. 121, secs. 4, 5 and 6.   (Code of Virginia of 1860,
pp. 570–571,) and this was taken it is believed without any
designed alteration from the Code of Virginia of 1819, ch. 99,
sec. 15, vol. 1, pp. 365–366.

The only change in the wording of this statute from what
it then was is that then it read when admitted to record as to
husband and wife "such deed shall be as effectual in law to
pass all the right, title and interest of the wife, as if she were
an unmarried woman, provided however that no covenant or
warranty contained in such deed hereafter executed shall in
any manner operate upon any *feme covert* or her heirs further
than to convey effectually from such *feme covert* and her heirs
her right of dower or other interest in real estate, which she
may have at the date of such deed."   This act in the Code of
1819 was compiled from acts passed in 1785, 1796 and 1814,
and the principle change introduced was in the persons before
whom the privy examination of the wife was to be taken.   It
will be seen by comparison of these acts that the principle
change in our law as to the effect of a deed executed by hus-
band and wife and duly admitted to record is that there has
been added some thirty years ago the words " such writing
shall operate to convey from the wife her right of dower in
the real estate embraced therein."   Whereas formerly this
right of dower was it is supposed sufficiently embraced in the
words still in the statute, "all the right, title and interest of
the wife " in the real estate.  Doubtless this change was made

because it had been said by some courts or judges, that this inchoate dower-interest was not " an interest in real estate " but a mere possibility.    There was clearly no intention on the part of the legislature to make any change in the law ; but it was simply an effort to describe this inchoate dower-interest in what was conceived to be more appropriate language.

But the language now used is probably just as open to criticism as the language used a hundred years ago.    The language now used is : " Shall operate to convey from the wife her right of dower in the real estate embraced in the deed." Now "convey" means transfer the title of land from one person or class of persons to another. (See Bouvier's Law Dictionary vol. 1, p. 399.)    Clearly an inchoate dower-interest is no title to land.    It is no estate present or future, vested or contingent and the term "convey" can be properly used, only when the transfer of some "estate in land" is spoken of.    Again this statute speaks of conveying *from* the wife but does not say that it is conveyed *to* any person and conveyance is a transfer of an estate in land from one person to another.    To speak therefore of conveying a right from one person is to use inappropriate language.    Again in this statute what is evidently meant to be spoken of as conveyed is the inchoate dower-interest but it is improperly called a right of dower.    This would possibly describe a widow's interest in her husband's real estate after his death, and before dower was assigned to her.    But it is inappropriate language to use when an inchoate dower-interest is meant.    This might perhaps be called properly " a contingent right of dower."    But, as we have seen, it has been questioned, whether it could be properly designated by these words.    In *Holden* v. *Boggess*, 20 W. Va. 78, Judge Haymond calls this inchoate dower-interest " a contingent dower-interest " which is perhaps as appropriate a name by which to designate it, as any other.    This Court in that case decided, that in a suit to enforce a purchase-money lien against a husband his wife could not properly be made a defendant in order to protect this interest.    Surely such an interest can not be properly spoken of as the subject of a conveyance, an "estate in land" being the only legitimate subject of conveyance.

It would then, it seems to me, be entirely improper to seize

hold of this word " convey " in this statute so inappropriately used, as we are asked to do by the counsel for the appellees, to give meaning to the statute, and from it draw the inference, that a wife in this mode could sell her contingent dower-interest.   These words were introduced into this statute at a time, when there was no public opinion, such as has sprung up, to give to married women any more or different control over their property or other rights than was conferred on them by the common law.   And by the common law the only control she had over her inchoate dower-interest was by joining with her husband in levying a fine or by joining with him in a common recovery to release this contingent interest as an incumbrance on the lands of her husband, when he wished to sell them, and never could she in this or any other manner dispose of her contingent dower as an interest separate and distinct from her husband's estate.   The language used in the statute, " such writing shall operate to convey to the grantee the wife's right of dower," seems to me to clearly indicate that no change was intended to be made in the power of the wife over her inchoate dower-interest.   For by levying with her husband a fine she could release her inchoate right of dower but could not sell or convey it to a grantee separately.   It could pass from her but not to the grantee separated from her husbands estate.   All that he got goes from the husband, but he got the land free from the incumbrance of the wife's inchoate dower-interest.   That by the fine was released to the husband.   In view of the fact, that this construction has been placed by the courts on all similar statutes in other States, this seems to me to be the construction which must be placed on our statute.

Judge Staples in the case of *Carr* v. *Porter et als.*, 33 Gratt. 279, expresses his views of the effect of a wife's uniting with her husband in a deed conveying lands to a purchaser, when as in this case the husband's estate in the land was a defeasible fee-determinable by an executory devise over on his dying without issue, the Virginia statute-law being identical with our statute.   He says on p. 285 :

"In the case before us she united with her husband in the deed to the defendant, who seeks in her name to recover or hold the dower relinquished by her.   A moment's reflection

will be sufficient to show that the claim can not be sustained. During the life of the husband the wife has no estate or interest in his lands.    She has a mere contingent right of dower which may be the subject of conveyance or relinquishment under the statute.    It may also constitute a valuable consideration for a *post* nuptial settlement because it is in the nature of a contingent lien or incumbrance upon the realty. Beyond this however it is not even a right of action.  When the wife unites with her husband in conveying the property to a purchaser, the effect is not to vest in the latter the dower-interest or any estate separate and distinct from that of the husband's, but simply to relinquish a contingent right in the nature of an incumbrance, which if not relinquished, will attach and be consummate on the death of the husband. This right being relinquished is gone forever, the charge upon the estate ceases and the title of the purchaser becomes complete.    The title so acquired is not to two estates or interests that of the husband and wife, but to one estate, that of the husband, discharged of the wife's contingent claim of dower. Indeed the dower is a mere continuation of the husband's estate, so that upon his death the freehold immediately descends upon the heir and the widow has a mere right of action to recover her interest.    See Tyler on Coverture and Infancy, 554, 586."

It will be perceived that the effect produced by the wife's joining with her husband under our statute is, when an absolute fee simple is conveyed, according to the opinion of Judge Staples just what according to the views I have expressed, is, when our statute is properly construed, the effect of such joint deed by a husband and wife.    While this, it is true, is but an *obiter dictum* of Judge Staples, it is so far as the effect produced by a wife uniting in a deed with her husband the unanimous opinion of the court of appeals of Virginia; for so far as this effect is concerned, these views were by the report inserted as the sixth point of the syllabus in that case   See p. 270.    This point is as follows:

"The effect of a wife uniting with her husband in a deed, is not to vest in the grantee any estate *separate and distinct* from that of her husband, but simply to *relinquish a contingent* right in the nature of an incumbrance upon the land

conveyed, which if not relinquished would attach and be consummate on the death of the husband."

The views expressed in this syllabus accord with those I have expressed and result from the construction I have given our statute, though the language, in which they are expressed, is much more appropriate, where an absolute fee simple estate is conveyed than when a defeasible fee simple estate is the subject of conveyance. The principal fault, which I have to find with the views of Judge Staples above quoted, is that it seems to me he applied the principles he laid down improperly and drew from them conclusions, to which, it seems to me, they do not properly lead. It would follow of course from these views, that, if a husband conveyed his land to a purchaser, the husband and wife could not afterwards convey her inchoate right of dower in this land to another person, for that would be to vest in the grantee an estate or interest of the wife *separate and distinct* from that of the husband. So if the husband retained his land, the husband and wife for the same reason could not under our statute by uniting in a deed convey her inchoate dower-interest.

To determine from these principles what is the effect of a deed by a husband and wife to a purchaser, where the estate of the husband is a defeasible estate in fee simple determinable upon his dying without children by an executory devise over, we must have a clear conception of the nature of such an estate. As it is settled that in such an estate a widow has a right of dower, though the husband die without children, and his estate is so determined thereby, that no estate would descend to his heirs, yet his interest in the land, if he has a wife, who survives him, is prolonged or continued, so that she may be endowed out of it. His dying without children would not in such a case determine absolutely his interest in said land; for as Judge Staples says in the quotation of his views above given: "Dower is a mere continuation of the husband's estate," just as the estate of the heir or devisee is a continuance of the intestate or testator's estate. The only difference is that the heirs or devisee take immediately the estate, which is a continuation of the intestate's or testator's estate. While the widow's dower-estate begins only, when the dower has been assigned; but when the estate

does begin it is but a continuation of the husband's estate. It is impossible to conceive of this dower-estate as anything but a prolongation or continuance of the husband's estate. For the wife can only be endowed out of the estate, of which her husband was seized during the coverture. This dower-estate of the wife in a defeasible estate of her husband determinable upon his death without children, whether he die without children or not, is but a continuation of her husband's estate a part and parcel of it and not an estate *separate and distinct* from her husband's; and therefore upon the principles, which we have laid down, as well as those laid down by Judge Staples in his views above quoted, there is no reason why this dower-estate or this right of dower should not be vested in the grantee by a wife uniting with her husband in conveying such an estate to a purchaser. It is still true, that by uniting with her husband she simply *relinquishes* a contingent right in the nature of an incumbrance upon the land conveyed.

If in such case the husband dies leaving children, the incumbrance on his prolonged estate in the hands of ;the heirs is a right to take as her dower one third of the value of the land during her life leaving the other two thirds to go at once into the possession of the heir as his fee simple property. If the husband dies without children, the incumbrance on the land is the same, but her right then is to take as her dower the whole of this continuation of her husband's estate. Whether the husband dies leaving children or leaving no children, the effect of the wife joining with him in a deed conveying such estate to a purchaser is to relinquish her right to have this dower laid off to her in the land conveyed; and it vests in the grantee this right, as in giving this effect to such deed the grantee is not vested either with an estate or interest in the land *separate and distinct* from that of the husband.

The object of our statute is, as we have seen, to enable the husband to dispose of the land by relieving it of this incumbrance; and it should be so understood as to promote the object for which it was passed, that is, to enable the husband to sell and convey his defeasible estate in fee simple in this land to the greatest advantage, it in so doing the

dower-estate or interest of the wife in the land be not *separated* from the husband's estate in the land.     By construing the effect of the husband and wife uniting in a deed conveying such an estate to a purchaser as vesting in him whatever estate or right either vested or contingent, which either of them had in such land, this object of the law is carried out; for the wife's right of dower is but a right to have an estate which is not *separate and distinct* from the husband's but is a part of it, a continuation, as we have seen, of the husband's estate.

I can see and have pointed out the evils, which would follow, if a wife were allowed by joining with her husband in a deed to convey *separate and distinct* from him this contingent dower-interest, so that his estate would be in one person, and this right to have dower assigned should be in another person (other than his widow).     This is as we have seen contrary to public policy; but I can see no public policy, which would prohibit a husband, his wife uniting with him in the deed, to convey to a purchaser such defeasible fee simple estate with all the rights springing out of it or attached to it, whether such rights belonged to the husband or the wife, if the whole estate of the husband and all his rights as well as those of his wife derived from and attached to the husband's estate pass to the purchaser and they be not *separated* but vested in one person.     It seems to me, that there can be no public policy, which would hinder any estate of any sort from being conveyed with all the rights and incidents, which belong to it.     On the contrary it seems to be contrary to public policy and an anomaly, that an estate in land with all the rights incident to it and derivative in their character could not be conveyed.     The statute, which we are construing, was intended to facilitate the alienation of lands and the conveyance of estates; but if it be so construed as to render it impossible to convey such defeasible estate in fee simple with all the derivative rights incident to it, we would in placing such construction on the statute be disregarding its object and defeating its purpose.

I must therefore dissent from the conclusion reached by Judge Staples in his views before quoted.     Much of his views I regard as sound especially when applied to absolute estates

in fee simple and it would appear that he used language peculiarly applicable to them. Some of these however are unsound, when applied to any sort of an estate unless qualified. He says for instance: " This right " (the contingent right of dower) " being relinquished is gone forever, the charge upon the estate ceases, and the title of the purchaser becomes complete." This is true, if the widow seeks to set up her claim of dower against the grantee in the deed or any one claiming title under him; but not if her claim of dower is set up against any stranger to the deed, as we have seen, that if the husband's estate as conveyed to the purchaser is set aside, as for instance for fraud, the wife's contingent right of dower at once revives as against every one, as none could claim under the grantee, as it cannot, as Judge Staples himself says, be *separated* from the husband's estate; and if it cannot operate as a relinquishment of dower in favor of the grantee, who in such case has not the estate of the husband, it cannot operate as an extinguishment for the benefit of a stranger. In fact, as we have seen, this relinquishment of dower by the wife, never extinguishes the right of the wife to dower, except when such extinguishment is for the benefit of the grantee in the deed.

The idea too expressed by Judge Staples in this opinion, but which I have not quoted, that, if the fact, that the wife joined in the deed with her husband, vested in the purchaser her interest as a distinct and separate interest from her husband's capable of being enforced, the result would be a merger of her interest so conveyed in the greater estate of the husband also conveyed, is it seems to me based on a misconception of what is essential to merger. Preston in his excellent work on Conveyancing, vol. 3, ch. 4, p. 51, lays down a number of circumstances which must exist before a merger can take place. The first of these is : " Two or more estates must meet in the same person in the same land." Now in the case before the Virginia court and in the case before us, as the wife had no estate, when the deed was made, if her contingent right of dower was separately conveyed, it could of course not merge in the estate conveyed by the husband; for a mere right never merges in an estate. Nor could it, when after the husband's death it became by assignment of dower

an estate, merge in the estate conveyed by the husband under the actual facts, which occurred in the Virginia case and in this case, that is, the death of the husband without children. For if this dower-estate could be, as supposed by Judge Staples, conveyed as a separate and distinct estate from the estate of the husband, which, we have shown, it could not be, as it could be only the continuation of the husband's estate, still there could be no merger; for on Judge Staples's supposition the estate conveyed by the husband terminates with his death and of course it can not merge with a dower-estate which did not come into existence till after the husband's estate had ceased to exist.

Applying these principles to the present case the deed of March 12, 1872, executed by Jacob H. Dunsmore and Mary C. Dunsmore, his wife, which purported to convey to Samuel W. Nickell an absolute estate in fee simple in this 207 acres of land, but which only conveyed to him a defeasible estate in fee simple determinable upon the death of Jacob H. Dunsmore without children, he having died without children leaving his wife surviving him, had the effect of not only conveying the said land to Samuel W. Nickell. during the life of Jacob H. Dunsmore but all the continuation of his right in this land after his death, that is the right of his widow, Mary C. Dunsmore, to have her dower assigned her in this land, which when assigned would be a dower-estate and a mere continuation or prolongation of the estate of Jacob H. Dunsmore in said land conveyed by said deed, her right to this claim this dower being released by her by said deed.

This being the case, the decree of the circuit court of Monroe county in this cause of June 5, 1885 must be affirmed and the appellee, Samuel W. Nickell must recover of the appellants his costs in this Court and thirty dollars damages; and this cause must be remanded to the circuit court of Monroe county to be further proceeded with according to the principles governing courts of equity.

AFFIRMED.